UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GAIL MURTAUGH, Individually and d/b/a
Crosby Hill Auto Recycling; RICHARD R.
MURTAUGH; MURTAUGH RECYCLING
CORP.; RICHARD O. MURTAUGH; and
FLOOD DRIVE PROPS., INC.,
                         Plaintiffs,

                                             5:08-CV-1168
v.                                             (GTS/GHL)

STATE OF NEW YORK; PETE GRANNIS,
Comm'r of Envtl. Conservation; CNTY. OF
OSWEGO; BENJAMIN CONLON; RICHARD
BRAZELL; MAUREEN LEARY; OP-TECH
ENVTL. SERVS., INC.; WILLIAM SIMPSON;
and ADM'R ANDREA RHONDA MILLER,
                         Defendants,

_____

APPEARANCES:                               OF COUNSEL:

LAW OFFICE OF RICHARD J. BRICKWEDDE     RICHARD J. BRICKWEDDE, ESQ.
   Counsel for Plfs. Gail Murtaugh, Richard R. Murtaugh
   and Murtaugh Recycling Corp.
One Park Place, 300 South State Street, Suite 400
Syracuse, New York 13202-2004

THE WLADIS LAW FIRM, PC               KEVIN C. MURPHY, ESQ.
   Counsel for Plfs. Richard O. Murtaugh and Flood Dr.
PO Box 245
5795 Widewaters Parkway
Syracuse, New York 13214

PETRONE & PETRONE, PC                LORI E. PETRONE, ESQ.
   Counsel for Def. County of Oswego
1624 Genesee Street
Utica, New York 13502

HANCOCKESTABROOK                  DOREEN A. SIMMONS, ESQ.
   Counsel for Defs. Simpson and Op-Tech Envtl. Servs.   JAMES P. YOUNGS, ESQ.
1500 AXA Tower I
Syracuse, New York 13221

HON. ERIC T. SCHNEIDERMAN                          CHARLES QUACKENBUSH, ESQ.
Attorney General for the State of New York         SHOSHANAH BEWLAY, ESQ.
  Counsel for Defs. New York, Grannis, Conlon,      Assistant Attorneys General
  Brazell, Leary, and Miller
The Capitol
Albany, New York 12224

HON. GLENN T. SUDDABY, United States District Judge

## <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court in this environmental action filed by Gail Murtaugh, Richard

R. Murtaugh, Murtaugh Recycling Corp., Richard O. Murtaugh, and Flood Drive Properties, Inc.

("Plaintiffs") are the following three motions: (1) a motion to dismiss for lack of subject-matter

jurisdiction, failure to state a claim upon which relief can be granted, and failure to join

indispensable parties, filed by Oswego County (hereinafter "County Defendant") (Dkt. No. 56,

Attach. 30); (2) a motion to dismiss for lack of subject-matter jurisdiction and failure to state a

claim upon which relief can be granted, filed by New York State, New York State Department of

Environmental Conservation Commissioner Pete Grannis, Benjamin Conlon, Richard Brazell,

Maureen Leary, and Andrea Rhonda Miller (hereinafter "State Defendants") (Dkt. No. 59,

Attach. 2); and (3) a motion to dismiss for lack of subject-matter jurisdiction and failure to state

a claim upon which relief can be granted, filed by Op-Tech Environmental Services and William

Simpson (hereinafter "Corporate Defendants") (Dkt. No. 60, Attach. 3).  For the reasons set forth

below, County Defendant's motion is granted in part and denied in part; State Defendants'

motion is granted; and Corporate Defendants' motion is granted.

## TABLE OF CONTENTS

I.   RELEVANT BACKGROUND...................................................................................5

    A.   Plaintiff's Claims.........................................................................................5

    B.   Defendants' Motions....................................................................................7

        1.   County Defendant's Motion...............................................................7

        2.   State Defendants' Motion.................................................................11

        3.   Corporate Defendants' Motion........................................................17

II.  RELEVANT LEGAL STANDARDS....................................................................20

    A.   Standard Governing Dismissals for Failure to State a Claim......................20

    B.   Standard Governing Dismissals for Lack of Subject-Matter Jurisdiction.................20

    C.   Standard Governing Dismissals for Failure to Join Indispensable Party...................21

    D.   Standards Governing Plaintiffs' Claims.....................................................22

III. ANALYSIS............................................................................................................23

    A.   Murtaugh Plaintiffs' CWA Claim..............................................................23

        1.   Whether Murtaugh Plaintiffs' Claim Should Be Dismissed on the Ground of Lack of Standing, "Public Policy," Collateral Estoppel and/or Failure to Fulfill the Jurisdictional Notice Requirement....................23

        2.   Whether, in the Alternative, Murtaugh Plaintiffs Have Failed to Allege that, at the Time They Filed Their Complaint, There Was a Continuous or Intermittent Violation of the CWA and a Reasonable Likelihood that County Defendant Would Continue to Pollute.........................................29

        3.   Whether, in the Alternative, Murtaugh Plaintiffs' Claim Should Be Dismissed for Failure to Join an Indispensable Party....................................29

        4.   Whether, in the Alternative, the Eleventh Amendment Bars Murtaugh Plaintiffs' Claim Against Defendant Grannis..............................................30

B.    Murtaugh Plaintiffs' RCRA Claims.............................................................................32

    1.    Claim Under 42 U.S.C. § 6972(a)(1)(A)....................................................32

        a.    Whether Murtaugh Plaintiffs' Claim Should Be Dismissed on
            Grounds of Lack of Standing, "Public Policy," Collateral
            Estoppel and/or the Eleventh Amendment..........................................32

        b.    Whether, in the Alternative, Murtaugh Plaintiffs Have Failed
            to Allege that, at the Time They Filed Their Complaint,
            County Defendant Was Accepting and/or Introducing Waste
            to the City Dump.................................................................................37

    2.    Claim Under 42 U.S.C. § 6972(a)(1)(B)....................................................37

C.    Plaintiffs' CERCLA Claim....................................................................................41

D.    Plaintiffs' Civil Rights Claims Under 42 U.S.C. § 1983..............................................46

    1.    Due Process Claims Against Defendants Conlon, Brazell, and Leary
        Corporate Defendants............................................................................46

    2.    Unlawful-Search-and-Seizure Claims Against Defendants Conlon,
        Brazell, and Leary and Corporate Defendants..........................................51

E.    Plaintiff Gail Murtaugh's Due Process and Unlawful-Search-and-Seizure
    Claims Against Defendant Leary and Corporate Defendants......................................53

F.    Plaintiffs' State Law Claims...................................................................................56

    1.    Claim for Nuisance Against Defendant New York State, Defendant
        Grannis, and County Defendant...............................................................56

    2.    Claim for Declaratory Relief Against Defendant New York State,
        and Defendants Miller, Brazell, Conlon, and Leary......................................62

    3.    Claim for Negligence Against Corporate Defendants....................................62

G.    State Defendants' and Corporate Defendants' Abstention Arguments.....................63

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

On October 30, 2008, Plaintiffs filed their Complaint in this action.  (Dkt. No. 1.)  On July 16, 2009, Plaintiffs filed an Amended Complaint.  (Dkt. No. 46.)  Generally, Plaintiffs' Amended Complaint asserts claims against Defendants arising from the alleged ownership and operation of the Old City of Fulton Dump (hereinafter "City Dump"), located at 40 Airport Drive, Fulton New York (hereinafter "County Property"), which allegedly has discharged, and continues to discharge, pollutants, hazardous substances and hazardous waste into the water of the United States and onto the property of Plaintiffs Gail Murtaugh and Flood Drive Properties, Inc.  (*Id*.)

More specifically, Plaintiff's Amended Complaint asserts the following three claims by Plaintiffs Gail Murtaugh, Richard R. Murtaugh, and Murtaugh Recycling Corp. ("Murtaugh Plaintiffs"), against County Defendant and Defendant Grannis: (1) a claim of violation of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*., based on the unlawful discharge of pollutants to an unnamed tributary of the Oswego River; (2) a claim of violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(A), based on the maintenance of an "open dump," which negatively impacts Murtaugh Plaintiffs and their real property and business operations; and (3) a claim of violation of RCRA, 42 U.S.C. § 6972(a)(1)(B), based on the handling, storage, treatment, transportation, or disposal of solid or hazardous waste contained on, at, or about the Old City of Fulton Dump (hereinafter "City Dump") located at 40 Airport Drive, Fulton New York (hereinafter "County Property").  (*Id*.)

5

In addition, Plaintiffs' Amended Complaint asserts the following claims by all Plaintiffs against County Defendant, Defendant New York State, and Defendant Grannis: (1) a claim of violation of 42 U.S.C. § 9601 et seq., the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), based on the releasing or threatened releasing of hazardous substances from, at, and about the City Dump; and (2) a state law claim for nuisance, based on the City Dump's discharge and release of leachate containing pollutants, hazardous substances, and hazardous wastes onto the real property located at 180 Flood Drive in the Town of Volney, Oswego County, New York (hereinafter "the Murtaugh Property") and the real property located at 170 Flood Drive, Town of Volney, Oswego County, New York (hereinafter the "Flood Property"). (*Id*.)

Finally, Plaintiffs' Amended Complaint asserts the following five claims against certain State Defendants and all Corporate Defendants arising from their entry onto Plaintiffs' properties, and removal of certain materials: (1) a claim of violation of due process and unlawful search and seizure under the Constitution and 42 U.S.C. § 1983, asserted by all Plaintiffs against Defendants Conlon, Brazell, and Leary, and Corporate Defendants, based on those Defendants' entry onto Plaintiffs' properties and creation of an excavation, which lowered the water table and induced and enhanced the flow of leachate discharge from the upgradient City Dump; (2) a claim of violation of due process and unlawful search and seizure under the Constitution and 42 U.S.C. § 1983, asserted by Plaintiff Gail Murtaugh, individually and d/b/a Crosby Hill Auto Recycling Corp., against Defendant Leary and Corporate Defendants, based on the removal and sale of scarp metal from the Murtaugh Property; (3) a state law claim for unlawful, willful, or malicious acts or omissions, asserted by all Plaintiffs against Defendant New York State, and Defendants

6

Miller, Leary, Conlon, and Brazell, based on actions that caused the lowering of the water table

on the Murtaugh Property, which resulted in unpermitted point source discharges from the City

Dump, the induced flow of pollutants and hazardous wastes, and a destruction of a portion of the

property; and (4) a state law claim for negligence, asserted by all Plaintiffs against Corporate

Defendants, based on actions and omissions concerning the Murtaugh Property and the Flood

Property.  (*Id*.)

Familiarity with the factual allegations supporting these claims in Plaintiff's Amended

Complaint is assumed in this Decision and Order, which is intended primarily for review by the

parties.  (*Id*.)

### B.    Defendants' Motions

### 1.    County Defendant's Motion

Generally, in support of its motion to dismiss for lack of subject-matter jurisdiction,

failure to state a claim upon which relief can be granted, and failure to join indispensable parties,

County Defendant argues as follows: (1) the Court lacks subject-matter jurisdiction over

Plaintiffs' CERCLA claim and/or Plaintiffs' have failed to state a CERCLA claim because (a)

Plaintiffs are admitted polluters of their property, (b) the County is not a "covered person" under

CERCLA, (c) Plaintiffs have not suffered an injury in fact from anyone's actions, (d) this claim

is barred by the doctrine of collateral estoppel because the issues giving rise to this claim have

been fully litigated in, and are inextricably intertwined with, prior New York State court

decisions, and (e) any claim arising out of 42 U.S.C. § 9613(f)(1) based on inadequate notice of

reclassification of the City Dump is barred by the governing three-year statute of limitations; (2)

the Court lacks subject-matter jurisdiction over Plaintiffs' RCRA claim and/or Plaintiffs' have

failed to state a RCRA claim because (a) a citizen suit cannot be used to enforce RCRA's permitting and/or operating regulations or standards, (b) 40 C.F.R. § 258.1 specifically exempts municipal solid waste landfills from liability under the RCRA, (c) a necessary element of a RCRA claim is that the dump pose an imminent and substantial endangerment to health or the environment, and here the City Dump does not present a significant threat to the public health or environment (because it has been classified as a Class 3 site), (d) County Defendant is not a "contributor" under 42 U.S.C. § 6972(a)(1)(B) of the RCRA, and (e) this claim is barred by the doctrine of collateral estoppel in that the issues giving rise to this claim have been fully litigated and are inextricably intertwined with prior New York Sate court decisions; (3) the Court lacks subject-matter jurisdiction over Murtaugh Plaintiffs' CWA claim and/or Murtaugh Plaintiffs have failed to state a CWA claim because (a) the results of the numerous proceedings mentioned in the Amended Complaint found that the former City Dump did not impact Plaintiffs' premises, (b) a necessary element of a CWA claim is that the dump pose an imminent and substantial endangerment to health or the environment, and here the City Dump does not present a significant threat to the public health or environment (in that it has been classified as a Class 3 site), (c) this claim is barred by the doctrine of collateral estoppel because the issues giving rise to this claim have been fully litigated and are inextricably intertwined with prior New York State court decisions, and (d) Plaintiff's Notice of Intent to the County was inadequate because it did not inform the County what pollutant it was being attributed to releasing;[1] (4) Plaintiffs'

---

[1]    County Defendant also argues that this claim should be dismissed because Plaintiffs have failed to allege facts plausibly suggesting that, at the time they filed their Complaint, there was a continuous or intermittent violation of the CWA and a reasonable likelihood that County Defendant would continue to pollute in the future.

nuisance claim should be dismissed because (a) it is barred by the governing statute of limitations, (b) the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims after dismissing their federal claims, and (c) Plaintiffs failed to timely serve a notice of this claim; (5) Plaintiffs are not entitled to injunctive relief because they cannot show irreparable harm to themselves or the public caused by others; and (6) Plaintiffs have failed to join the parties that they identified in their Notice of Intent to Sue, who they acknowledge contributed to the past and present contamination and alleged imminent endangerment to health or the environment, and who are therefore indispensable. (*See generally* Dkt. No. 56, Attach. 30 [County Def.'s Memo. of Law].)

In their response to County Defendants' motion, Murtaugh Plaintiffs argue as follows: (1) because the County Defendant's motion does not comply with Fed. R. Civ. P. 7, 8, and 12(b), the Court should decline to consider any of the evidence submitted by County Defendant; (2) County Defendant's argument that Murtaugh Plaintiffs lack standing is without merit; (3) Plaintiffs have alleged facts plausibly suggesting that County Defendant, through State and Corporate Defendants, accepted and/or introduced waste (or other hazardous substances) to the City Dump; (4) Murtaugh Plaintiffs are not barred by the doctrine of collateral estoppel from bringing this action; (5) the Amended Complaint states a cause of action under the CWA; (6) Plaintiffs' CERCLA claim should not be dismissed because (a) they have pled a prima facie case of liability, (b) the fact that Murtaugh Plaintiffs have admitted to contaminating the Murtaugh Property does not preclude them from bringing this action to recover costs for past releases and continuing releases of leachate, acetone and other pollutants that flow from the City Dump onto the Murtaugh Property, (c) the existence of past, and the threat of future, releases has not already

been adjudicated in New York State court, (d) the issue of whether the County acquired the City Dump involuntarily or is an "owner or operator" involves a question of fact, and is therefore not a basis for dismissal under Fed. R. Civ. P. 12(b), and (e) whether the alleged release was the result of acts or omissions by third parties involves a question of fact, and is therefore not a basis for dismissal under Fed. R. Civ. P. 12(b); (7) Plaintiffs' claim under § 6972(a)(1)(A) of the RCRA should not be dismissed because (a) County Defendant is subject to regulation pursuant to 40 C.F.R. § 257, (b) Plaintiffs have alleged facts plausibly suggesting that County Defendant owns or operates the City Dump, which is an "open dump," and (c) Plaintiffs have alleged facts plausibly suggesting that the City Dump has one or more regular ongoing or intermittent point source discharges of leachate, acetone and other pollutants into waters of the United States, and those discharges are without the benefit of the necessary permits; (8) Plaintiffs' claim under § 6972(a)(1)(B) of the RCRA should not be dismissed because they have alleged facts plausibly suggesting the occurrences of continued discharges of leachate subsequent to 2005, and uncontrolled discharges of pollutants in volumes sufficient to saturate the Flood Property and turn significant portions orange in color; (9) Plaintiffs' state law nuisance claim should not be dismissed because (a) federal causes of action should remain in this case, (b) the notice of claim was proper, and (c) the statute of limitations had not expired when this claim was brought; and (10) County Defendant's argument that Plaintiffs failed to name an indispensable party is without merit. (*See generally* Dkt. No. 66 [Response Memo. of Law].)

In their response to County Defendants' motion, Richard O. Murtaugh, and Flood Drive Properties, Inc. ("Flood Plaintiffs") argue as follows: (1) County Defendant's argument that Plaintiffs lack standing is without merit; (2) Plaintiffs' CERCLA claim should not be dismissed

because (a) they have pled a prima facie case of liability, (b) the fact that Murtaugh Plaintiffs have admitted to contaminating the Murtaugh Property does not preclude Flood Plaintiffs from bringing this action to recover costs for past releases and continuing releases of leachate, acetone and other pollutants which flow from the City Dump onto the Flood Property, (c) the existence of past, and the threat of future, releases has not already been adjudicated in New York State court, (d) the issue of whether the County acquired the City Dump involuntarily or is an "owner or operator" involves a question of fact, and is therefore not a basis for dismissal under Fed. R. Civ. P. 12(b), and (e) whether the alleged release was the result of acts or omissions by third parties involves a question of fact, and is therefore not a basis for dismissal under Fed. R. Civ. P. 12(b); (3) Plaintiffs' state law nuisance claim should not be dismissed because (a) federal causes of action should remain in this case, (b) the notice of claim was proper, and (c) the statute of limitations had not expired when this claim was brought; and (4) County Defendant's argument that Plaintiffs failed to name an indispensable party is without merit.  (*See generally* Dkt. No. 68 [Response Memo. of Law].)

In its reply, County Defendant essentially reiterates previously advanced arguments. (*See generally* Dkt. No. 72 [County Def.'s Reply Memo. of Law].)

### 2.      State Defendants' Motion

Generally, in support of their motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, State Defendants argue as follows: (1) the Court should abstain from exercising jurisdiction over this action because (a) litigation was fully underway in New York State court before this action was commenced, (b) Plaintiffs' claim that governmental officials have derelicted their obligations under relevant statutes and

regulations implicates an important state interest, and (c) New York State courts will afford the parties a full and fair opportunity to litigate the claims/issues presented in the Amended Complaint; (2) the Court should alternatively abstain from exercising jurisdiction over this action because New York State has a compelling interest in deciding litigation challenging its authority to regulate and remediate contaminated property, and abstention avoids disturbing state efforts to establish a coherent policy with respect to a matter of substantial public concern; (3) the Court should decline to exercise jurisdiction over Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine because the relief that Plaintiffs seek would effectively void or reverse a related ruling in New York State court; (4) Plaintiffs' claims are barred by the doctrine of collateral estoppel because all issues raised in this action have been briefed, argued, adjudicated and rejected in New York State Supreme Court; (5) State Defendants are immune from suit under the doctrine of sovereign immunity because the claims asserted against the individual State Defendants are actually claims asserted against them in their official capacity and Plaintiffs have failed to establish that New York State waived its sovereign immunity; (6) individual State Defendants are entitled to qualified immunity because their actions did not violate any clearly established rights, and were not objectively unreasonable, in light of the authority granted to them by an administrative law judge and the New York State courts to conduct investigative and remedial activities on Plaintiffs' properties; (7) Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed because (a) they have failed to allege facts plausibly suggesting that State Defendants interfered with a constitutionally cognizable property interest, (b) Plaintiffs have failed to allege facts plausibly suggesting that State Defendants' efforts to investigate and remediate Plaintiffs' environmental violations were "arbitrary," such that Plaintiffs may succeed

on their substantive due process claim, and (c) Plaintiffs have failed to allege facts plausibly suggesting that State Defendants' actions constitute a "taking" because (i) Plaintiffs have no cognizable right to carry on with their auto dismantling/recycling business, and no legitimate property interest in the scrap metal and contaminated junk removed from their property, (ii) a New York State court has already concluded that the contamination on Plaintiffs' properties predated any remediation efforts by New York State, and (iii) the allegation that State Defendants caused pollution damage to Plaintiffs' properties by engaging in remedial work and/or failing to eradicate the adjacent landfill is conclusory and unsupported by any other factual allegations; (8) Plaintiffs lack standing to assert causes of action under CERCLA, the CWA, and the RCRA because the New York State Department of Environmental Conservation ("NYS DEC") and New York State courts have determined that Plaintiffs contaminated their own property, and it would violate public policy to allow such culpable parties to invoke federal environmental statutes against the agency which sought to investigate, curtail and remediate the pollution; (9) Plaintiffs' claim under the CWA must be alternatively dismissed because (a) they failed to fulfill the jurisdictional notice requirement of the CWA, and (b) they have failed to allege facts plausibly suggesting a claim under the CWA; (10) Plaintiffs' claim under § 6972(a)(1)(A) of the RCRA must alternatively be dismissed because (a) Defendant Grannis is not the "owner" or "operator" of the City Dump, and his authority to decide whether and how to investigate environmental complaints cannot serve as a jurisdictional basis for a citizen suit under the RCRA, (b) Defendant Grannis cannot plausibly be in violation of any "permit, standard, regulation, condition, requirement, prohibition, or order" involving the City Dump because the landfill was closed before the RCRA was enacted, (c) the City Dump cannot be an

13

"open dump," violative of the RCRA, because the statute expressly excludes sanitary landfills and facilities which are disposal facilities for hazardous waste; (11) Plaintiffs' claim under § 6972(a)(1)(B) of the RCRA must alternatively be dismissed because (a) the City Dump has been, and continues to be, regulated as a Class 3 site on the New York State Inactive Hazardous Waste Site Registry, and therefore it does not present an "imminent and substantial endangerment" as a matter of law, and (b) Plaintiffs have failed to allege facts plausibly suggesting that they have been the "innocent victims" of contamination that has caused, or has the real potential to cause, an "imminent and substantial endangerment"; (12) Plaintiffs' claim under CERCLA must alternatively be dismissed because (a) they have failed to allege facts plausibly suggesting that they have engaged in any remedial activities at the former City Dump, or on their own property, and (b) Plaintiffs have failed to allege facts plausibly suggesting that Defendant Grannis had anything to do with the City Dump prior to its closure in 1974; and (13) Plaintiffs' state law claims should be dismissed because (a) no federal cause of action should survive this motion, and therefore it would be improper for the Court to exercise jurisdiction over the pendent claims, (b) Plaintiffs have already litigated and lost their state law claims in New York State court, (c) to the extent Plaintiffs' pendent claims remain pending in New York State court, the Court should abstain from considering these claims pursuant to the *Younger*, *Burford*, and *Rooker-Feldman* doctrines, and (d) Plaintiffs' pendent claims must fail under the doctrine of qualified immunity. (*See generally* Dkt. No. 59, Attach. 2 [State Defs.' Memo. of Law].)

In their response to State Defendants' motion, Murtaugh Plaintiffs argue as follows: (1) because State Defendants' motion does not comply with Fed. R. Civ. P. 7, 8, and 12(b), the Court should decline to consider any of the evidence submitted by State Defendants; (2) the

Court should not abstain from exercising jurisdiction over this action because none of the abstention doctrines are applicable; (3) Plaintiffs' notice of intent satisfied the jurisdictional requirements of the CWA; (4) State Defendants are not entitled to qualified immunity; (5) none of the individual State Defendants are immune from suit under the Eleventh Amendment, and (with regard to the claims asserted against New York State) New York State has waived its Eleventh Amendment immunity; (6) State Defendants Leary and Conlon are not entitled to prosecutorial immunity; (7) Murtaugh Plaintiffs are not barred by the doctrine of collateral estoppel from bringing this action; (8) the Amended Complaint states a cause of action under the CWA; (9) Plaintiffs' CERCLA claim should not be dismissed because (a) despite not receiving solid or hazardous waste since 1974, the City Dump has never been closed, (b) Defendant Grannis is subject to liability as the Commissioner of the NYS DEC, responsible for overseeing the City Dump, (c) Plaintiffs have pled a prima facie case of liability, and (d) the existence of past, and the threat of future, releases has not already been adjudicated in New York State court; (10) Plaintiffs' claim under § 6972(a)(1)(A) of the RCRA should not be dismissed because (a) Plaintiffs have alleged facts plausibly suggesting that the City Dump is an "open dump" as opposed to a "sanitary landfill," and (b) Plaintiffs have alleged facts plausibly suggesting that an ongoing violation of the RCRA exists at the City Dump; (11) Plaintiffs' claim under § 6972(a)(1)(B) of the RCRA should not be dismissed because they have alleged facts plausibly suggesting (a) occurrences of continued discharges of leachate, and (b) that the City Dump contains both solid waste and hazardous waste; (12) Plaintiffs' state law nuisance claim should not be dismissed because federal causes of action should remain in this case; and (13) Plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1988 should not be dismissed because Plaintiffs have

alleged facts plausibly suggesting that certain Defendants violated Plaintiffs' constitutional rights by excavating materials and removing scrap from their properties, and whether the scrap might have been abandoned by Plaintiffs (if not for the removal) involves a question of fact. (*See generally* Dkt. No. 66 [Response Memo. of Law].)

In their response to State Defendants' motion, Flood Plaintiffs argue as follows: (1) the Court should not abstain from exercising jurisdiction over this action because (a) Flood Plaintiffs were never and are not now parties to any litigation, action, or proceeding that would support abstention, and (b) none of the abstention doctrines are applicable; (2) Flood Plaintiffs' claim under 42 U.S.C. § 1983 should not be dismissed because (a) Flood Plaintiffs have a cognizable property interest in the Flood Property, and have a right to have this property free of flooding by contaminated waste that originated from the City Dump, and the actions taken by Corporate and State Defendants violated this right, and (b) whatever rights the Summary Abatement Order ("SAO") afforded Defendants,[2] it did not authorize State and Corporate Defendants to flood and contaminate Plaintiffs' properties; (3) Flood Plaintiffs are not barred from bringing this action by the doctrine of collateral estoppel because they were not parties to the SAO, hearing, or subsequent litigation; (4) State Defendants are not entitled to qualified immunity; (5) none of the individual State Defendants are immune from suit under the Eleventh Amendment, and, with regard to the claims asserted against New York State, it has waived its Eleventh Amendment immunity; (6) State Defendants Leary and Conlon are not entitled to prosecutorial immunity; (7) Plaintiffs' CERCLA claim should not be dismissed because (a) despite not receiving solid or

---

[2] The Summary Abatement Order was issued by the Commissioner of the NYS DEC, and directed, among other things, that the Murtaugh Property be subjected to an environmental investigation. (Dkt. No. 56, Attach. 5.)

hazardous waste since 1974, the City Dump has never been closed, (b) Defendant Grannis is

subject to liability as the Commissioner of the NYS DEC, responsible for overseeing the City

Dump, (c) Plaintiffs have pled a prima facie case of liability, and (d) Plaintiffs have alleged facts

plausibly suggesting that they incurred costs related to responding to the flows of water and

leachate on their own property; (8) Plaintiffs' state law nuisance claim should not be dismissed

because federal causes of action should remain in this case; and (9) Plaintiffs' state law claim for

a declaration that State Defendants engaged in negligence, gross negligence, or reckless, wanton,

or intentional misconduct in their actions and omissions occurring on Plaintiffs' properties

should not be dismissed because none of the federal causes of action should be dismissed.  (*See*

*generally* Dkt. No. 68 [Response Memo. of Law].)

　　　　In their reply, State Defendants essentially reiterate previously advanced arguments.  (*See*

*generally* Dkt. No. 74 [State Defs.' Reply Memo. of Law].)

### 3.　　Corporate Defendants' Motion

　　　　Generally, in support of their motion to dismiss for failure to state a claim upon which

relief can be granted and for lack of subject-matter jurisdiction, Corporate Defendants argue as

follows: (1) Plaintiffs' claims against them under 42 U.S.C. § 1983 must be dismissed because

(a) Corporate Defendants were acting solely at the direction and under the supervision of state

officials, and therefore they cannot be held liable as "state actors," and (b) it is contrary to "good

public policy" to hold a government contractor liable for damages; (2) even if Corporate

Defendants could be held liable for the actions undertaken pursuant to State directives, Plaintiffs'

claims should be dismissed because the complained-of conduct is properly addressed in New

York State court; and (3) the Court should decline to exercise supplemental jurisdiction over the

state law claims.  (*See generally* Dkt. No. 60, Attach. 3 [Corporate Defs.' Memos. of Law].)

In their response to Corporate Defendants' motion, Murtaugh Plaintiffs argue as follows: (1) the Court should not abstain from exercising jurisdiction over this action because (a) the relevant New York State court does not have jurisdiction over Plaintiffs' CERCLA, RCRA, or CWA claims, (b) there is not an action pending in New York State court with regard to Plaintiffs' due process claim based on Corporate Defendants removing scrap from the Murtaugh Property, (c) certain of the CWA, RCRA, and CERCLA claims did not occur until after the Article 78 proceeding was brought, and therefore could not have been brought before the relevant New York State court, and (d) abstention over the state law claims is inappropriate because the federal claims should not be dismissed; (2) Plaintiffs' claims under 42 U.S.C. §§ 1983, 1985, and 1988 should not be dismissed because they have alleged facts plausibly suggesting that Corporate Defendants (a) deliberately and intentionally acted to damage Plaintiffs' properties, and cause or initiate illegal discharges of hazardous substances and petroleum into the environment, (b) conducted or aided in conducting an unauthorized and illegal search of Plaintiffs' properties for hazardous wastes, (c) intentionally seized and sold Plaintiffs' property, despite not being authorized to do so; and (3) Plaintiffs' complained-of conduct has not been addressed in a New York State court proceeding.  (*See generally* Dkt. No. 66 [Response Memo. of Law].)

In their response to Corporate Defendants' motion, Flood Plaintiffs argue as follows: (1) the Court should not abstain from exercising jurisdiction over this action because (a) Flood Plaintiffs were never and are not now parties to any litigation, action, or proceeding that would support abstention, (b) the relevant New York State court does not have jurisdiction over Plaintiffs' CERCLA, RCRA, or CWA claims, (c) certain of the CWA, RCRA, and CERCLA claims did not occur until after the Article 78 proceeding was brought, and therefore could not

have been brought before the relevant New York State court, and (d) abstention over the state law claims is inappropriate because the federal claims should not be dismissed; (2) Plaintiffs' claims under 42 U.S.C. § 1983 should not be dismissed because (a) Plaintiffs have alleged facts plausibly suggesting that Corporate Defendants were state actors, (b) the federal government contractor defense is not applicable to Corporate Defendants and their contract with New York State, and (c) public policy does not suggest that the civil rights claims asserted by Flood Plaintiffs should be dismissed; and (3) Plaintiffs' Ninth Cause of Action (i.e., their claim for a declaration that Corporate Defendants engaged in negligence, gross negligence, or reckless, wanton, or intentional misconduct in their actions and omissions occurring on Plaintiffs' properties) should not be dismissed because Corporate Defendants received fair notice of this claim.  (*See generally* Dkt. No. 68 [Response Memo. of Law].)

In their reply, in addition to reiterating previously advanced arguments, Corporate Defendants argue as follows: (1) Plaintiffs have failed to cite any legal authority in support of their claim that Corporate Defendants can be held liable as "state actors" under 42 U.S.C. § 1983; (2) Plaintiffs failed to respond to the public policy arguments raised in Corporate Defendants' motion papers; (3) Plaintiffs failed to set forth any legal basis for their claim that the government contractor defense does not apply to Corporate Defendants; and (4) Plaintiffs have failed to provide fair notice of the legal basis on which their Ninth Cause of Action is based. (*See generally* Dkt. No. 75 [Corporate Defs.' Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Dismissals for Failure to State a Claim

For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp.2d 174, 181-84 (N.D.N.Y. 2009) (Suddaby, J.). The Court would add only a few words regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  For purposes of Fed. R. Civ. P. 12(b)(6), "[t]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").  Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (internal quotation marks and citation omitted).

### B.    Legal Standard Governing Dismissals for Lack of Subject-Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In

20

resolving a motion to dismiss for lack of subject matter jurisdiction under [Fed. R. Civ. P.]

12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d

at 113 (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." *Id*. (citation omitted).

"A motion to dismiss based on the abstention doctrine is . . . considered as a motion made

pursuant to Rule 12(b)(1)."  *City of N.Y. v. Milhelm Attea & Bros., Inc*., 550 F. Supp.2d 332, 341

(E.D.N.Y. 2008).  Similarly, a dismissal for lack of standing is generally brought pursuant to

Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See Conn. v. Physicians Health Servs. of Conn., Inc*., 287

F.3d 110, 114-15 (2d Cir. 2002); *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591,

594 (2d Cir. 1993) (stating that "dismissals for lack of standing may be made pursuant to Fed. R.

Civ. P. 12(b)(6), rather than [as a defect in federal jurisdiction pursuant to] Fed. R. Civ. P

12(b)(1)," and clarifying that "standing and subject matter jurisdiction are separate questions").

"[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." *Lerner*

*v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

C.     **Legal Standard Governing Dismissals for Failure to Join Indispensable**
       **Party**

Rule 19 of the Federal Rules of Civil Procedure "sets forth a two-step test for
determining

whether the court must dismiss an action for failure to join an indispensable party." *Viacom*

*Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  "First, the court must determine

whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party

under Rule 19(a)." *Viacom Intern., Inc.*, 212 F.3d at 724.  Rule 19(a) provides that the absent

party should be joined, if feasible, where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).  "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Viacom Intern., Inc.*, 212 F.3d at 724.

However, "where the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons, . . . the court must finally determine whether the party is 'indispensable.'" *Id*. at 725. "If the court determines that a party is indispensable, then the court must dismiss the action pursuant to Rule 19(b)." *Id*.  Rule 19(b) sets fourth the following four factors to be considered by the court in determining whether a party is indispensable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by . . . protective provisions in the judgment . . . shaping the relief[,] or . . . other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

### D.    Legal Standards Governing Plaintiffs' Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiffs' claims in this action, the Court will not recite, in their entirety, those legal standards in

this Decision and Order, which (again) is intended primarily for review by the parties.  (Dkt. No. 56, Attach. 30 [County Def.'s Memo. of Law]; Dkt. No. 59, Attach. 2 [State Defs.' Memo. of Law; Dkt. No. 60, Attach. 3 [Corporate Defs.' Memo. of Law]; Dkt. Nos. 66, 68 [Plfs.' Response Memos. of Law]; Dkt. No. 72 [County Def.'s Reply Memo. of Law]; Dkt. No. 74 [State Defs.' Reply Memo. of Law]; Dkt. No. 72 [Corporate Defs.' Reply Memo. of Law].)

## III.    ANALYSIS

### A.    Murtaugh Plaintiffs' CWA Claim

As described in more detail above in Part I.B. of this Decision and Order, County Defendant and Defendant Grannis seek the dismissal of this claim essentially on the following four grounds: (1) a lack of standing, "public policy," collateral estoppel and/or failure to fulfill the jurisdictional notice requirement; (2) the failure to allege facts plausibly suggesting that, at the time they filed their Complaint, there was a continuous or intermittent violation and a reasonable likelihood that County Defendant would continue to pollute in the future;(3) the failure to join an indispensable party; and (4) the Eleventh Amendment.

####         1.    Whether Murtaugh Plaintiffs' Claim Should Be Dismissed on the Grounds of Lack of Standing, "Public Policy," Collateral Estoppel and/or Failure to Fulfill the Jurisdictional Notice Requirement

Defendants' first argument is based on the following: (1) an argument by County Defendant that it was already determined in prior proceedings that the City Dump did not impact Plaintiffs' premises; (2) an argument by Defendant Grannis that, because the NYS DEC and New York State courts have determined that Plaintiffs contaminated their own property, it would violate public policy to allow them to invoke federal environmental statutes against the agency which sought to investigate, curtail and remediate the pollution; (3) an argument by County Defendant that, because the City Dump has been classified as a Class 3 site, a necessary element

of a CWA claim that the dump pose an imminent and substantial endangerment to health or the environment is lacking; (4) an argument by County Defendant and Defendant Grannis that this claim is barred by the doctrine of collateral estoppel because the issues giving rise to Plaintiffs' CWA claim have been fully litigated and are inextricably intertwined with prior New York State court decisions; and (5) an argument by County Defendant and Defendant Grannis that Plaintiffs failed to fulfill the jurisdictional notice requirement of the CWA.

The Court rejects County Defendant's argument that it was already determined in prior proceedings that the City Dump did not impact Plaintiffs' premises. Defendants are correct that a NYS DEC employee testified during an administrative hearing that the City Dump does not pose an imminent and substantial endangerment to health or the environment. (Dkt. No. 56, Attach. 10, at 28.) However, testimony that the City Dump did not impact Plaintiffs' properties is quite different than a legal conclusion that the City Dump did not impact Plaintiffs' properties. Moreover, while there is record evidence that the City Dump did not pose a significant threat to the public health or the environment as of April 1, 2003 (Dkt. No. 56, Attach. 21, at 2-3), this fact does not negate the potential finding that the City Dump impacted (and continues to impact) Plaintiffs' premises.

In addition, the Court rejects Defendant Grannis's argument that, because the NYS DEC and New York State courts have determined that Plaintiffs contaminated their own property, it would violate public policy to allow them to invoke federal environmental statutes against the agency which sought to investigate, curtail and remediate the pollution. Plaintiffs' claim against Defendant Grannis under the CWA is not based on his role in investigating and remediating Plaintiffs' properties. Rather, that claim is based on Defendant Grannis's role (or dereliction of duty) in overseeing the City Dump. In the event that Plaintiffs have alleged facts plausibly

suggesting a claim for relief under the CWA against Defendant Grannis, it would not violate public policy to allow that claim to go forward, based on the factual allegation that Defendant Grannis played a role in the investigation of Plaintiffs' property.  Simply put, these are two separate issues.

Moreover, the Court rejects County Defendant's argument that, because the City Dump has been classified as a Class 3 site, a necessary element of a CWA claim that the City Dump poses an imminent and substantial endangerment to health or the environment is lacking.[3] "Section 1365 of the CWA authorizes citizen suits against 'any person . . . alleged to be in violation' of state or federal effluent standards or limitations." *City of Newburgh v. Sarna*, 690 F. Supp.2d 136, 156 (S.D.N.Y. 2010) (quoting 33 U.S.C. § 1365[a][1]).  "The Supreme Court has held that this language does not confer federal subject-matter jurisdiction over citizen suits for 'wholly past violations.'"  *Sarna*, 690 F. Supp.2d at 156 (quoting *Gwaltney*, 484 U.S. at 64). However, "citizen-plaintiffs [need not] prove their allegations of ongoing noncompliance before jurisdiction attaches under [the CWA]."  *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).  Rather, the statute requires only that a defendant be "*alleged* to be in violation."  33 U.S.C.A. § 1365(a) (emphasis added).  The Court finds that (1) Murtaugh Plaintiffs have sufficiently alleged facts plausibly suggesting County Defendant's ongoing noncompliance with the CWA, and (2) County Defendant has failed to show, by a preponderance of the evidence, that its asserted violation of the CWA is "wholly past."  (Rather, Murtaugh Plaintiffs' argument is more appropriate on a motion for summary judgment, under the

---

[3]     The parties do not dispute that, in order for Plaintiffs to state a claim under the CWA, they must allege, among other things, that ongoing discharges by the City Dump pose an imminent and substantial endangerment to health or the environment.

circumstances.)  As a result, the Court rejects County Defendant's argument that, based on the

record evidence demonstrating that the City Dump was classified in 2003 as a Class 3 site,

Plaintiffs have failed to establish a necessary element of their claim.

Furthermore, the Court rejects County Defendant's and Defendant Grannis's argument

that this claim is barred by the doctrine of collateral estoppel as a matter of law, based on the

current record.  It is well-settled that "a state court judgment may have issue preclusive effect on

a subsequent federal action, even if the subsequent action is within the exclusive jurisdiction of

the federal courts."  *Doyle v. Town of Litchfield*, 372 F. Supp.2d 288, 295 (D. Conn. 2005).

However, in order for a state action to have issue-preclusive effect in a subsequent, exclusively

federal action, the federal action must involve "identical issues actually litigated and necessarily

decided in the plaintiff's state action . . . ."  *Doyle*, 372 F. Supp.2d at 295.  As a result, to

determine whether the state action in this case has issue-preclusive effect over Plaintiffs' CWA

claim in this action, the Court must examine (1) whether the issue in the state action is identical

to the issue in this action, and (2) whether the issue in this action was actually litigated and

necessarily decided in the state action.  *Id*.

The CWA prohibits the "discharge of any pollutant" except in compliance with an

NPDES or SPDES permit.  *See* 33 U.S.C. §§ 1311(a), 1342.  The CWA defines "discharge of a

pollutant" to mean "any addition of any pollutant to navigable waters from any point source."

33 U.S.C. § 1362(12).  Here, Plaintiffs have alleged that (1) County Defendant and Defendant

Grannis, "as the owners and operators of the City Dump, discharge pollutants, namely[] acetone

and leachate, from a point source, namely[,] the City Dump . . . to navigable waters, namely[] an

unnamed tributary of the Oswego River, without a permit[,]" and (2) the discharges are "on-

going."  (Dkt. No. 46, at ¶¶ 65, 68.)

26

In the prior New York State court proceeding, Murtaugh Plaintiffs asserted, among other things, a cause of action seeking to "enjoin use of a DEC race track and training facility because the [City Dump] was never properly closed." (Dkt. No. 59, Attach. 5, at 135.) In support of their argument that they were entitled to injunctive relief, Murtaugh Plaintiffs "state[d,] without support[,] that contaminants leached from the [City Dump] site onto [Plaintiffs' properties]." (*Id*.) The cause of action was dismissed for (1) failure to exhaust administrative remedies, and (2) failure to join County Defendant, an indispensable party. (*Id*.) In ordering the dismissal, New York State Supreme Court Judge Deborah H. Karalunas noted that Murtaugh Plaintiffs attempted to "circumvent the exhaustion issue" by "invok[ing] the common law of private nuisance . . . base[d] on [their] speculation that the [City Dump] is polluting the adjacent Murtaugh property." (*Id*.) Judge Karalunas further noted that Murtaugh Plaintiffs' "reference to nuisance and federal environmental laws for the first time in [their] memorandum of law is to no avail." (*Id*.)

In other words, in dismissing this cause of action, the New York Sate court did not rule that the City Dump does not discharge pollutants to navigable waters (and therefore did not consider whether the owners and operators of the City Dump were past polluters involved in ongoing noncompliance). Indeed, Judge Karalunas expressly stated that she was not considering Plaintiffs' late-blossoming "federal environmental law[]" claim. As a result, this action does not involve "identical issues actually litigated and necessarily decided in . . . [P]laintiff[]s['] state action." *Doyle*, 372 F. Supp.2d at 295.

Finally, the Court rejects County Defendant's and Defendant Grannis's argument that Murtaugh Plaintiffs' CWA claim should be dismissed because Plaintiffs failed to fulfill the jurisdictional notice requirement of the CWA. Defendants are correct that Plaintiffs' citizen suit

Notices must identify the pollutant(s) at issue.[4]  However, Defendants are incorrect that

Plaintiffs' Notices failed to do so.  (*See* Dkt. No. 59, attach. 5, at 341-44 [stating that "excavation

activities . . . since on or about September 2006[] caused regular and on-going point source

discharges from the [City] Dump onto the [Murtaugh] [P]roperty . . . and into waters of the

United States[,]" and "[t]hese point source discharges contain high concentrations of acetone and

other listed and/or identified pollutants and hazardous substances").  In addition, Defendants are

correct that Plaintiffs' Notices must identify a "point source."  Furthermore, the Second Circuit

has *implicitly* indicated that a landfill does not qualify as a point source.[5]  However, a "point

source" is to be defined broadly.[6]  For this reason, the Court has trouble concluding as a matter

of law at this early stage of the proceeding that the City Dump cannot constitute a point source.

> **2.     Whether, in the Alternative, Murtaugh Plaintiffs Have Failed to
> Allege that, at the Time They Filed Their Complaint, There Was a
> Continuous or Intermittent Violation of the CWA and a Reasonable
> Likelihood that County Defendant Would Continue to Pollute**

As stated above in Part III.A.1. of this Decision and Order, Plaintiffs have alleged that (1)

---

[4]      *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.*, 273 F.3d 481, 487-88 (2d Cir. 2001) ("To state a claim based on unpermitted discharges, the plaintiff must allege some pollutant that was discharged without a permit[, and] . . . to the extent the plaintiff intends to prosecute multiple violations involving multiple pollutants, each pollutant that will be the basis of such a claim must be set forth in the NOI letter.").

[5]      In *U.S. v. Plaza Health Labs., Inc.*, 3 F.3d 643, 646 (2d Cir. 1993), the Second Circuit noted that, "[a]lthough by its terms the definition of 'point source' is nonexclusive, the words used to define the term and the examples given ('pipe, ditch, channel, tunnel, conduit, well, discrete fissure', etc.) evoke images of physical structures and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways."  In addition, in *Dague v. City of Burlington*, 935 F.2d 1343 (2d Cir. 1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992), where contaminants leached from a landfill through groundwater into the pond, which "were then conveyed into the rest of the [marsh]" by a stone railroad culvert, the Court found that the stone railroad culvert, and not the landfill, was a point source.  *Dague*, 935 F.2d at 1354-55.

[6]      *See Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 219 (2d Cir. 2009).

County Defendant and Defendant Grannis, "as the owners and operators of the City Dump,

discharge pollutants, namely[] acetone and leachate, from a point source, namely[,] the City

Dump . . . to navigable waters, namely[] an unnamed tributary of the Oswego River, without a

permit[,]" and (2) the discharges are "on-going."  (Dkt. No. 46, at ¶¶ 65, 68.)  For this reason, the

Court finds that Plaintiffs have alleged facts plausibly suggesting a claim upon which relief can

be granted under the CWA.

### 3.    Whether, in the Alternative, Murtaugh Plaintiffs' Claim Should Be Dismissed for Failure to Join an Indispensable Party

The Court rejects County Defendant's argument that this otherwise valid claim should be

dismissed based on Plaintiffs' failure to join indispensable parties.  Although the Second Circuit

has yet to rule on the issue, the Court is persuaded by the findings of other circuit courts, and

district courts, that CWA liability (as well as RCRA and CERCLA liability) is joint and several.[7]

---

[7]    *See Maine People's Alliance And Natural Resources Defense Council v. Mallinckrodt, Inc*., 471 F.3d 277, 298 (1st Cir. 2006) ("RCRA liability, generally speaking, is joint and several."); *Cox v. City of Dallas, Tex*., 256 F.3d 281, 301 n.37 (5th Cir. 2001) (noting that "several courts have found that the RCRA imposes joint and several liability"); *Redwing Carriers v. Saraland Apartments*, 94 F.3d 1489, 1512-1513 (11th Cir. 1996) (finding joint and several liability under CERCLA); *U.S. v. M/V Big Sam*, 681 F.2d 432, 438-39 (5th Cir. 1982) (finding joint and several liability under CWA); *City of Bangor v. Citizens Commc'ns Co.*, 437 F. Supp.2d 180, 218 (D. Me. 2006) ("RCRA liability is joint and several."); *U.S. v. Bodenger*, 03-CV-0272, 2003 WL 22228517, at *2 (E.D. La. Sept. 25, 2003) (noting that the OPA relies on the CWA and has adopted "Section 311's standard for liability of dischargers for cleanup costs for the discharge of oil, including economic damages, removal costs and natural resource damages[, which is] strict, joint and several"); *Aurora Nat'l Bank v. Tri Star Mktg., Inc.*, 990 F. Supp. 1020, 1034 (N.D. Ill. 1998) (noting that  "[w]hile joint and several liability may be appropriate [under RCRA] if the harm is indivisible . . . where the harm can be separated, liability must be allocated accordingly"); *City of N.Y. v. Exxon Corp*., 766 F. Supp. 177, 198 (S.D.N.Y. 1991) ("CERCLA liability is joint and several where two or more defendants have contributed to a single indivisible harm. . . . The burden of establishing that harm is divisible rests on the defendant."); *U.S. v. Conservation Chem. Co.*, 619 F. Supp. 162, 199 (W.D. Mo. 1985) (discussing in detail the reasons underlying joint and several liability in RCRA violations); *cf. U.S. v. Alcan Aluminum Corp*., 990 F.2d 711, 721-22 (2d Cir. 1993) (Having rejected Alcan's proffered defenses to liability, one would suppose there is no limit to the scope of CERCLA liability. . . . To avoid such a harsh result courts have added a common law gloss onto the statutory framework. . . . They have at once adopted a scheme of joint and several liability but at

As a result, Plaintiffs need not sue every potentially responsible person in order to bring a cost recovery action under the CWA, RCRA, or CERCLA.

### 4.   Whether, in the Alternative, the Eleventh Amendment Bars Murtaugh Plaintiffs' Claim

"While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme] Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  "State immunity extends to state agencies and to state officers who act on behalf of the state." *Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999). "Thus, when the state is the real party in interest, the Eleventh Amendment generally bars federal court jurisdiction over an action against a state official acting in his or her official capacity." *Burnette*, 192 F.3d at 57.

However, more than one hundred years ago, the Supreme Court carved out a narrow exception to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123 (1908) (holding that suits against state officers, rather than against State itself, are permitted when seeking prospective, but not compensatory or other retrospective, relief).  The doctrine of *Ex Parte Young* "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past . . . and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993).  In addition, "[s]uits against state officials that, in form or substance, seek compensatory damages (rather than

---

the same time have limited somewhat the availability of such liability against multiple defendants charged with adding hazardous substances to a Superfund site. . . . In other words, the damages are apportioned[,] [b]ut where each tortfeasor causes a single indivisible harm, then damages are not apportioned and each is liable in damages for the entire harm.").

prospective declaratory or injunctive relief) which will be paid with funds from the state treasury (rather than from the pockets of individual officials) remain barred." *Berman Enter., Inc. v. Jorling*, 793 F. Supp. 408, 412 (E.D.N.Y. 1992) (citing *Edelman v. Jordan*, 415 U.S. 651, 664 [1974]; *Green v. Mansour*, 474 U.S. 64, 73 [1985] ["[A] declaratory judgment is not available when the result would be a partial 'end run' around our decision in *Edelman*"]).

When an action against a state official acting in his or her official capacity is barred, a plaintiff may only proceed against the state "if Congress [has] abrogate[d] the states' constitutionally secured immunity from suit in federal court." *Burnette*, 192 F.3d at 57. "To do so, Congress must make 'its intention unmistakably clear in the language of the statute.'" *Id.* (quoting, *inter alia*, *Dellmuth v. Muth*, 491 U.S. 223, 228 [1989]). "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985). Rather, "[w]hen Congress chooses to subject the States to federal jurisdiction, it must do so specifically." *Atascadero*, 473 U.S. at 246.

"The CWA, RCRA, and CERCLA contain substantially identical provisions permitting citizens to sue as private attorneys general in circumstances where government authorities have, after notice, failed to take steps to remedy particular environmental harms." *Burnette*, 192 F.3d at 57. "Far from evidencing a Congressional intent to do away with sovereign immunity, these provisions are expressly limited by the Eleventh Amendment." *Id.* at 57 (affirming district court's holding that "these citizen suit provisions do not abrogate Connecticut's sovereign immunity and that the state defendants are therefore entitled to immunity from suit in federal court").

Here, Murtaugh Plaintiffs request "an Order requiring Defendant[] . . . Grannis [as the

Commissioner of the New York State Department of Environmental Conservation] to pay civil penalties to the United States Treasury in an amount of up to $37,500.00 or more per day per violation for each [CWA] violation." (Dkt. No. 46, at ¶¶ 18, 76.) Such a request is barred by the Eleventh Amendment. *See Berman Enter., Inc.*, 793 F. Supp. at 412. As a result, Murtaugh Plaintiffs' CWA claim (as well as their RCRA and CERCLA claims) against Defendant Grannis (and Defendant New York State) are dismissed.

### B. Murtaugh Plaintiffs' RCRA Claims

#### 1. Claim Under 42 U.S.C. § 6972(a)(1)(A)

As described in more detail above in Part I.B. of this Decision and Order, County Defendant and Defendant Grannis seek the dismissal of this claim essentially on the following two grounds: (1) a lack of standing, "public policy," collateral estoppel and/or the Eleventh Amendment; and (2) the failure to allege facts plausibly suggesting that, at the time they filed their Complaint, County Defendant was accepting and/or introducing waste (or other hazardous substances) to the City Dump.

##### a. Whether Murtaugh Plaintiffs' Claim Should Be Dismissed on Grounds of Lack of Standing, "Public Policy," Collateral Estoppel and/or the Eleventh Amendment

Defendants' first argument is based on the following: (1) an argument by County Defendant that a citizen suit cannot be used to enforce the RCRA's permitting and/or operating regulations or standards; (2) an argument by Defendant Grannis that, because the NYS DEC and New York State courts have determined that Plaintiffs contaminated their own property, it would violate public policy to allow them to invoke federal environmental statutes against the agency which sought to investigate, curtail and remediate the pollution; (3) an argument by County Defendant that 40 C.F.R. § 258.1 specifically exempts municipal solid waste landfills from

liability under the RCRA; (4) an argument by County Defendant that a necessary element of an RCRA claim is that the dump pose an imminent and substantial endangerment to health or the environment, and here the City Dump has been classified as a Class 3 site (i.e., it does not present a significant threat to the public health or environment); (5) an argument by County Defendant and Defendant Grannis that the issues giving rise to Plaintiffs' RCRA claim have been fully litigated and are inextricably intertwined with prior New York State court decisions and this claim is therefore barred by the doctrine of collateral estoppel; (6) an argument by Defendant Grannis that the City Dump cannot be an "open dump," violative of the RCRA, because the statute expressly excludes sanitary landfills and facilities which are disposal facilities for hazardous waste; and (7) an argument by Defendant Grannis that he cannot be held liable under § 6972(a)(1)(A) because he is not the "owner" or "operator" of the City Dump, and his authority to decide whether and how to investigate environmental complaints cannot serve as a jurisdictional basis for a citizen suit under the RCRA.

As an initial matter, the Court agrees with County Defendant that a citizen suit cannot be used to enforce the RCRA's permitting and/or notification requirements, and thus "a citizen suit pursuant to subsection (a)(1)(A) to enforce § 6925 and § 6930 is unavailable." *Orange Env't, Inc. v. Cnty. of Orange*, 860 F. Supp. 1003, 1220 (S.D.N.Y. 1994). However, Murtaugh Plaintiffs' claim under 42 U.S.C. § 6972(a)(1)(A) is based on County Defendant (and Defendant Grannis) being in violation of the RCRA's regulation prohibiting facilities classified as "open dumps" (not RCRA's regulation regarding permitting and/or notification requirements).

In addition, for the reasons stated above in Part III.A.1. of this Decision and Order, the Court rejects the following arguments: (1) Defendant Grannis's argument that, because the NYS DEC and New York State courts have determined that Plaintiffs contaminated their own property, it would violate public policy to allow them to invoke federal environmental statutes

against the agency which sought to investigate, curtail and remediate the pollution; (2) County

Defendant's argument that, because the City Dump has been classified as a Class 3 site (i.e., it

does not present a significant threat to the public health or environment), a necessary element of

an RCRA claim that the dump pose an imminent and substantial endangerment to health or the

environment is missing; and (3) County Defendant and Defendant Grannis's argument that,

because the issues giving rise to Plaintiffs' RCRA claim have been fully litigated and are

inextricably intertwined with prior New York State court decisions, this claim is barred by the

doctrine of collateral estoppel.

Furthermore, while the Court agrees with County Defendant's argument that 40 C.F.R. §

258.1 specifically exempts municipal solid waste landfills from liability under the RCRA, the

Court rejects County Defendant's argument (and Defendant Grannis's related argument) that

Defendants are exempt from liability under 42 U.S.C. § 6972(a)(1)(A) because the City Dump

cannot be classified as an "open dump."  As Murtaugh Plaintiffs point out in their memorandum

of law, the City Dump is subject to the regulation requirements set forth in 40 C.F.R. § 257

(regardless of the applicability of 40 C.F.R. § 258.1).  Pursuant to 40 C.F.R. § 257.1(a)(1),

"Facilities failing to satisfy . . . the criteria in Sections 257.1 through 257.4 . . . are considered

open dumps, which are prohibited under section 4005 of the [RCRA]."  In addition, 40 C.F.R. §

257.3-3(a) states as follows: "For purposes of section 4004(a) of the Act, a facility shall not

cause a discharge of pollutants into waters of the United States that is in violation of the

requirements of the National Pollutant Discharge Elimination System (NPDES) under section

402 of the Clean Water Act, as amended."  In other words, where a plaintiff alleges that a facility

has caused a discharge of pollutants into waters of the United States that is in violation of the

requirements of the National Pollutant Discharge Elimination System (NPDES) under Section

402 of the Clean Water Act, as amended, the plaintiff has alleged that the facility is an "open

dump," in violation of the RCRA.  *See S. Road Assoc. v. Int'l Bus. Mach. Corp.*, 216 F.3d 251,

256 (2d. Cir. 2000) ("Because open dumps are prohibited by § 6945(a), and because failing any

criterion listed in §§ 257.1 through 257.4 automatically renders a facility an open dump, failure

to satisfy any one criterion itself violates RCRA.").[8]

Here, the Court has already found that Plaintiffs have alleged facts plausibly suggesting a

claim for relief under the CWA against County Defendant based on a discharge of pollutants into

waters of the United States.  For this reason, the Court finds that Plaintiffs have alleged facts

plausibly suggesting that the City Dump is an "open dump."

Having said that, because Defendant Grannis and County Defendant are alleged to be in

violation of the regulation 40 C.F.R. § 257.3-3(a) as a result of "[m]aintaining" a facility (i.e.,

the City Dump), which "cause[s] a discharge of pollutants into waters of the United States . . . in

violation of . . . the Clean Water Act," the Court may consider the merits of Plaintiffs' RCRA

claim against them only if they did in fact *maintain* the City Dump.  Because liability is derived

from the facility, the Court finds that these Defendants could have been responsible for

maintaining the City Dump only if they were the "owners" or "operators" of the facility.

In their Amended Complaint, Plaintiffs allege that County Defendant is the "owner" of

the City Dump.  (Dkt. No. 46 at ¶¶ 17, 37.)  As a result, the Court may consider the merits of

---

[8]        The Court notes that it too "believes that Congress intended to allow citizen suits
under [42 U.S.C. § 6972(a)(1)(A)] of [the] RCRA for past violations where the effects of the
violation remain remediable."  *Fallowfield Dev. Corp. v. Strunk*, 89-CV-8644, 1990 WL 52745,
at *11 (E.D. Pa. Apr. 23, 1990).  In other words, "allowing improperly disposed of hazardous
waste to remain on the property" can give rise to a cause of action under the RCRA.  *Fallowfield
Dev. Corp.*, 1990 WL 52745, at *11.  Having said that, the Court recognizes that Defendants
may not have *caused* "a discharge of pollutants into waters of the United States."  However, at
this stage of the proceedings, the Court cannot determine this issue.

Plaintiffs' RCRA claim under 42 U.S.C. § 6972(a)(1)(A) against County Defendant.

Turning to Plaintiffs' claim against Defendant Grannis, Plaintiffs allege that, as Commissioner of the NYS DEC, he is the "operator" of the City Dump because (1) the NYS DEC leases space on the "surface of the City Dump" from the County, where the NYS DEC "constructed and operates a racetrack and . . . training facility[,]" (2) the NYS DEC "has breached the surface of the City Dump by separately installing a septic tank and a leach field in the unclosed City Dump[,]" and (3) "[i]n recent years, the County, the Commissioner, and/or the NYSDEC or someone acting on their behalf has placed fill in the mapped wetlands areas of the City Dump, including locations where NYSDEC operates its training facility and racetrack." (Dkt. No. 46 at ¶¶ 37-39, 41.)

Even setting aside the conclusory nature of the allegation that "the County, the Commissioner, and/or the NYS DEC or someone acting on their behalf has placed fill in the mapped wetlands areas of the City Dump," the Court finds that Plaintiffs have failed to allege facts plausibly suggesting that Defendant Grannis "operated" the City Dump.  Rather, Plaintiffs have alleged facts plausibly suggesting, at best, that the NYS DEC operates a training facility and racetrack on the City Dump.  As set forth in 40 C.F.R. § 260.10, "Operator means the person responsible for the *overall operation* of a facility."  40 C.F.R. § 260.10 (emphasis added). Simply put, even assuming that the NYS DEC were not entitled to immunity under the Eleventh Amendment for the reasons discussed above in Part III.A.4. of this Decision and Order (which it is), Plaintiffs have failed to allege facts plausibly suggesting that the NYS DEC operated the entire facility (as opposed to the training facility and racetrack located on the facility), let alone allege facts plausibly suggesting that Defendant Grannis, in his individual capacity, did so.

As a result, Plaintiffs' claim against Defendant Grannis under 42 U.S.C. § 6972(a)(1)(A)

is dismissed.

> **b.      Whether, in the Alternative, Murtaugh Plaintiffs Have Failed to Allege that, at the Time They Filed Their Complaint, County Defendant Was Accepting and/or Introducing Waste to the City Dump**

County Defendant argues that this claim should be dismissed because Plaintiffs have failed to allege facts plausibly suggesting that, at the time they filed their Complaint, County Defendant was accepting and/or introducing waste (or other hazardous substances) to the City Dump.  As stated above in note 8 of this Decision and Order, citizen suits under 42 U.S.C. § 6972(a)(1)(A) of the RCRA may proceed based on past violations where the effects of those violations remain remediable.  Moreover, the issue of whether County Defendant was the *cause* of any past (or ongoing) violation cannot be decided at this early stage of the proceedings.  As a result, and for the reasons stated in Part III.B.1. of this Decision and Order, the Court finds that Plaintiffs have alleged facts plausibly suggesting a claim for relief under 42 U.S.C. § 6972(a)(1)(A) against County Defendant.

## 2.      Claim Under 42 U.S.C. § 6972(a)(1)(B)

As described in more detail above in Part I.B. of this Decision and Order, County Defendant and Defendant Grannis seek dismissal of this claim essentially because, among other things, these two Defendants have never contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste.  Based on the even the most liberal construction of Plaintiffs' Amended Complaint, the Court accepts this argument.

To succeed on a claim under 42 U.S.C. § 6972(a)(1)(B), a RCRA plaintiff must ultimately establish the following:

> (1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the handling, storage, treatment,

transportation, or disposal of solid or hazardous waste, as defined by RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment.

*Prisco v. A & D Carting Corp.*, 168 F.3d 593, 608 (2d Cir. 1999).

With regard to the second element, "[t]he Court finds that a straightforward reading of RCRA compels a finding that only active human involvement with the waste is subject to liability under RCRA § [6972](a)(1)(B)." *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 263 F. Supp.2d 796, 844 (D. N.J. 2003). This is because "[t]he ordinary meaning of 'contribute' is 'to act as a determining factor.'" *Interfaith Cmty. Org.*, 263 F. Supp.2d at 844 (quoting *Webster's II New Riverside Univ. Dictionary* [1998]). "Thus, Congress intended to impose liability only where a person is shown to have affirmatively acted as a determining factor over the waste management activities listed in RCRA [§ 6972](a)(1)(B)." *Id.* (noting that "[t]he legislative history also supports the conclusion that Congress intended that RCRA § [6972](a)(1)(B) reach only persons engaged in the active management of waste").[9] As the Third Circuit held in *U.S. v. CDMG Realty Co. et al.*, 96 F.3d 706 (3d Cir. 1996), "passive migration of

---

[9]     *See also ABB Indus. Sys., Inc. v. Prime Tech., Inc. et al.*, 120 F.3d 351, 359 (2d Cir. 1997) (affirming dismissal of RCRA § 6972(a)(1)(B) claim against Zero Max based on alleged indifference or failure to remediate pre-existing contamination "because ABB cannot show that Zero Max spilled hazardous chemicals or otherwise contaminated the site"); *Delaney v. Town of Carmel*, 55 F. Supp.2d 237, 255–257 (S.D.N.Y. 1999) (holding that defendant Layhill, who purchased property 15 years after disposal ceased and who did not contain the waste after learning of the problem, was not liable under RCRA); *Marriott Corp. v. Simkins Indus., Inc.*, 929 F. Supp. 396, 398 n.2 (S.D. Fla. 1996) (dismissing RCRA claim against Marriott on basis that a "delay in taking remedial action upon discovery of contamination caused by a previous owner does not constitute wrongful handling or storage of hazardous waste"); *First San Diego Prop. v. Exxon*, 859 F. Supp. 1313 (S.D. Cal. 1994) (dismissing RCRA claim brought by waste generator, Exxon, against plaintiff property owner who purchased property years after Exxon contaminated groundwater where Exxon alleged plaintiff had exacerbated the environmental conditions through "indifference" in not investigating or cleaning up property after it had discovered contamination).

contamination dumped in the land prior to [defendant]'s ownership does not constitute disposal." *CDMG*, 96 F.3d. at 711 (rejecting the holding in *U.S. v. Price*, 523 F. Supp. 1055 [D. N.J. 1981], *aff'd. on other grounds*, 688 F.2d 204 [3d Cir. 1982] that the RCRA 'disposal' definition includes migration of contaminants from previously dumped waste);[10] *see also Interfaith Cmty. Org.*, 263 F. Supp.2d at 845 (concluding that "RCRA liability may be imposed on the Grace Defendants in this case only upon a showing that they actively engaged in the management or disposal of COPR at the Site, and not upon evidence that they merely displayed alleged 'studied indifference' to pre-existing chromium contamination resulting from Mutual's COPR disposal activities").

Here, Plaintiffs have not alleged facts plausibly suggesting that the City Dump is active. Rather, Plaintiffs have alleged that "the City Dump *was* used for the disposal of municipal and industrial wastes, including waste inks, solvents, toluene and acetone." (Dkt. No. 46 at ¶ 27 [emphasis added].)  Moreover, Plaintiffs have not alleged facts plausibly suggesting that County Defendant and/or Defendant Grannis contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste.  Instead, Plaintiffs have simply alleged, in conclusory fashion, that these Defendants "have contributed or are contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste."  (Dkt. No. 46 at ¶ 106.)  Such a pleading is not enough.[11]  As a result, Plaintiffs' claim under 42 U.S.C. §

_____

[10]     "Although CMDG addressed CERCLA liability, the Court was interpreting the RCRA definition of 'disposal,' which is incorporated by reference into CERCLA."  *Interfaith Cmty. Org.*, 263 F. Supp.2d at 845 n.10 (citing 42 U.S.C. § 9601[29]).

[11]     *See Empire State Beer Distrib. Ass'n, Inc. ex rel. Alcoholic*, 09-CV-10339, 2010 WL 749828, at *6 (S.D.N.Y. Mar. 1, 2010) (granting motion to dismiss where Plaintiffs, "in alleging the[ir] claims . . . merely recite[] the elements of the doctrine in formulaic fashion, without providing any additional factual matter that would show that such claims are plausible"); *Tracy v. NVR, Inc.*, 667 F. Supp.2d 244, 247 (W.D.N.Y. 2009) (dismissing a complaint after

6972(a)(1)(B) against Defendant Grannis and County Defendant is dismissed.[12]

The Court would add only that Plaintiffs' allegation regarding Defendants' "contribution" would be frivolous if Plaintiffs were aware, at the time they filed their Amended Complaint, that the City Dump was abandoned as a dumping area in 1962,[13] and County Defendant did not take possession of the City Dump until 1968 (i.e., that the County Defendant never *contributed* to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste).[14]  (Dkt. No. 56, Attach. 28.)  However, based on the previously identified pleading deficiency, the Court need not, and does not, resolve this latter pleading issue.[15]

---

finding that "mere boilerplate allegations . . . stated solely upon information and belief and without any supporting details-essentially 'a formulaic recitation of the elements of a cause of action'-are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to . . . liability as an employer under the FLSA"); *Johnson v. Nextel Commc'n, Inc.*, 07-CV-8473, 2009 WL 928131, at *3 (S.D.N.Y. Mar. 31, 2009) ("Under the 'plausibility' standard, it is not mandatory that the complaint contain detailed factual allegations, but it does require more than labels, conclusions, and recitation of the elements of a cause of action."); *Ello v. Singh*, 531 F. Supp.2d 552, 580 (S.D.N.Y. 2007) ("Simply reciting the elements of claim in a complaint, as Plaintiff has done here, is not sufficient to defeat a Rule 12(b)(6) motion.").

[12]      Plaintiffs' claim under 42 U.S.C. § 6972(a)(1)(B) against Defendant Grannis is dismissed for the alternative reason that he is not the "owner" or "operator" of the City Dump for the reasons explained above in Part III.B.1. of this Decision and Order.

[13]      (Dkt. No. 56, Attach. 26 at 2-3; Dkt. No. 56, Attach. 27, at 2, 4-6.)

[14]      The Court recognizes that, in light of the NYS DEC adducing record evidence establishing that the City Dump's hazardous waste disposal period was from 1950 to 1974 (Dkt. No. 59, Attach. 5, at 235), Plaintiffs' pleading could have been made in good faith.

[15]      "[W]hen a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous."  *Thornhill Publ'g Co. v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9th Cir. 1979).  "Because [42 U.S.C. § 6972(a)(1)(B)] of [the] RCRA 'provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief,' the question of jurisdiction and the merits of this action are intertwined.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004).  As a result, here, dismissal for lack of subject-matter jurisdiction is improper unless the allegations in the complaint are frivolous.

C.      **Plaintiffs' CERCLA Claim**

As stated above in Part I.A. of this Decision and Order, Plaintiffs assert a CERLCA claim

against Defendant New York State, Defendant Grannis, and County Defendant.

As described in more detail above in Part I.B. of this Decision and Order, County

Defendant seeks the dismissal of this claim essentially because (1) Plaintiffs are admitted

polluters of their property, (2) the County is not a "covered person," (3) Plaintiffs have not

suffered an injury in fact from anyone's actions, (4) the issues giving rise to Plaintiffs' CERCLA

claim have been fully litigated and are inextricably intertwined with prior New York State court

decisions and this claim is therefore barred by the doctrine of collateral estoppel, and (5) any

claim arising out of 42 U.S.C. § 9613(f)(1) based on inadequate notice of reclassification of the

City Dump is barred by the three-year statute of limitations.

Similarly, Defendant New York State and Defendant Grannis seek dismissal of this claim

because (1) Plaintiffs have failed to allege facts plausibly suggesting that they have engaged in

any remedial activities at the former City Dump, or on their own property, (2) Plaintiffs have

failed to allege facts plausibly suggesting that Defendant Grannis had anything to do with the

City Dump prior to its closure in 1974, and (3) it is barred by the Eleventh Amendment.

As an initial matter, the Court finds, for the reasons stated above in Part III.A.4. of this

Decision and Order, that this claim against Defendant New York State and Defendant Grannis is

barred under the Eleventh Amendment.  Moreover, for the reasons stated above in Part III.B.1.a

of this Decision and Order, that State Defendants are not the operators of the City Dump.  For

these reasons, Plaintiffs' CERCLA claim against Defendant New York State and Defendant

Grannis is dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3).

Turning to Plaintiffs' CERCLA claim against County Defendant, County Defendant has

not cited, nor is the Court aware of, any cases standing for the proposition that admitted polluters

are precluded from seeking recovery for the release of hazardous substances onto their property.

Indeed, such a rule would appear to contravene the intended purpose of CERCLA, which is to

promote the "'timely cleanup of hazardous waste sites' and . . . ensure that the costs of such

cleanup efforts [a]re borne by those responsible for the contamination." *Burlington N. and Santa*

*Fe Ry. Co. v. U.S.*, 129 S.Ct. 1870, 1873 (2009) (quoting *Consol. Edison Co. of N.Y. v. UGI*

*Util., Inc.*, 423 F.3d 90, 94 [2d Cir. 2005]).  As a result, the Court rejects County Defendant's

argument that, because Murtaugh Plaintiffs' are admitted polluters, they are precluded from

seeking recovery for the County's alleged release of hazardous substances onto Plaintiffs'

properties.  Moreover, the Court rejects the County's argument that this claim is barred by the

doctrine of collateral estoppel for the reasons stated above in Part III.A.1. of this Decision and

Order.[16]


In addition, the Court rejects County Defendant's argument that it is not a "covered

person" under CERCLA.  The elements of a private party CERCLA claim are as follows:

> (1) the defendant is a responsible party as defined in § 9607(a); (2) the
> site is a 'facility' as defined in § 9601(9); (3) 'there is a release or
> threatened release of hazardous substances at the facility'; (4) the
> plaintiff incurred response costs as a result of the release or threatened
> release; and (5) the response costs were necessary and consistent with
> the national contingency plan (NCP).

*Doyle*, 372 F. Supp.2d at 296 (quoting *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 [2d

Cir. 1992]).  Under 42 U.S.C. § 9607(a)(1) of CERCLA, subject only to the defenses set forth in

---

[16]      Murtaugh Plaintiffs concede in their response memorandum of law that they have
not pled a claim for contribution under 42 U.S.C. § 9613(f)(1), and that "the prerequisites for
such a claim do not exist."  (Dkt. No. 66, Attach. 2 at 46.)  As a result, the Court need not, and
does not, consider this issue further.

42 U.S.C. § 9607(b), "the owner . . . of a . . . facility" is a covered person.[17]  Under 42 U.S.C. §

9607(b), an owner of a facility shall not be liable if the owner "can establish by a preponderance

of the evidence that the release or threat of release of a hazardous substance and the damages

resulting therefrom were caused solely by [one of the following]:

> (1) an act of God; (2) an act of war; (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . , if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or (4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b).

At the pleading stage of a proceeding, it is inappropriate to determine whether a

defendant has "establish[ed] by a preponderance of the evidence" one of these defenses.

Moreover, as the Second Circuit has made clear, "current owners are liable if, *inter alia*, there

has been a 'release' of hazardous substances."  *ABB Indus. Sys., Inc.*, 120 F.3d at 358 (citing 42

---

[17]    "The term 'owner' . . . does not include a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign."  42 U.S.C. § 9601(20)(D).  However, "[t]h[is] exclusion . . . [does] not apply to any State or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility . . . ."  42 U.S.C. § 9601(20)(D).  In other words, in the event that County Defendant "involuntarily acquire[d]" the City Dump, and establishes that it did not cause or contribute to the release or threatened release of a hazardous substance from the facility, it cannot be held liable under CERCLA.  However, the issue of whether County Defendant involuntarily acquired the City Dump for $1, which appears to be the case (Dkt. No. 56, Attach. 28), as well as the issue of whether County Defendant caused or contributed to the release or threatened release of a hazardous substance from the facility, cannot be decided at this stage of the proceedings.

U.S.C. § 9607[a]).  "Unlike the definition of disposal, release is defined to include 'leaching,' . . . which is commonly used to describe passive migration . . . ."  *Id*.  In other words, an owner who did not contribute to the contamination of his property may nonetheless be liable for the release of hazardous substances.  *See Niagra Mohawk Power Corp. v. Chevron U.S.A., Inc*., 596 F.3d 112, 120 (2d Cir. 2010) (noting that, under CERCLA, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there").[18]

Finally, the Court rejects County Defendant's argument that Plaintiffs lack standing to bring this claim because the record establishes that Plaintiffs have not suffered an injury in fact from anyone's actions.  Plaintiffs have alleged facts plausibly suggesting that they incurred expenses as a result of the release of hazardous substances from City Dump onto their properties. (Dkt. No. 46 at ¶¶ 167, 169-71.)  Moreover, "[u]nder CERCLA, traditional causation principles are 'relaxed' such that the party seeking costs need not show that a specific PRP's waste caused the incurrence of cleanup costs."  *DVL, Inc. v. Gen. Elec. Co.*, 07-CV-1075, 2010 WL 5067620, at *12 (N.D.N.Y. Dec. 6, 2010) (Kahn, J.) (citing *Niagra Mohawk Power Corp.*, 596 F.3d at 130).  "Rather, the party seeking costs need only show, that 'there was a release or threatened release, which[ ] caused incurrence of response costs, and[ ] that the defendant generated hazardous waste at the cleanup site. . . . What is not required is that the government [or another authorized party] show that a specific defendant's waste caused incurrence of cleanup costs.'"  *DVL, Inc.*, 2010 WL 5067620, at *12 (quoting *Niagra Mohawk Power Corp.*, 596 F.3d at 130). "CERCLA thus 'relaxes' but does not eliminate the causation requirement: a plaintiff need not show a causal link between that particular waste and the response costs the plaintiff incurred, but

---

[18]       Pursuant to 42 U.S.C. § 9601(20)(D), this would be the case for County Defendant only if it were determined that the City Dump had been acquired voluntarily.

it must demonstrate that a defendant deposited hazardous waste at the site in question." *Id.*

In addition, County Defendant is correct that the record establishes that certain Plaintiffs involuntarily incurred response costs related to the contamination of the Murtaugh Property. (Dkt. No. 58.)  However, as County Defendant concedes, there is no past or pending CERCLA action such that Plaintiffs should be seeking contribution under Section 113(f)(3)(B) of CERCLA.  Accordingly, the fact that the response costs were not "voluntarily" incurred does not prohibit Plaintiffs from seeking to recover costs from the County as a potentially responsible party.[19]

In sum, Plaintiffs have alleged facts plausibly suggesting the following: (1) County Defendant is a responsible party; (2) County Defendant owns a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) Plaintiffs incurred response costs on their properties as a result of the release or threatened release; and (5) their costs were necessary and consistent with the requirements of the National Contingency Plan.  Furthermore, the issue of whether *any* response costs were *caused* by hazardous substances released from the facility (as opposed to solely by Plaintiffs own actions), as well as the issue of whether the costs were necessary and consistent with the national contingency plan, involve questions of fact that cannot be decided at this early stage of the proceedings.

For all of these reasons, Plaintiffs' CERCLA claim against Defendant New York State

---

[19]  *See Reichhold, Inc. v. U.S. Metals Refining Co.*, 03-CV-0453, 2008 WL 5046780, at *7 (D. N.J. Nov. 20, 2008) (finding that, where plaintiff did not incur costs "voluntarily," but "engaged in the (much protracted) investigation and (partial) remediation of the Site in satisfaction of its obligations under ECRA/ISRA," the costs incurred were "voluntary and thus recoverable under § 107 . . . because to conclude otherwise "would have the anomalous result of barring the doors of the courthouse to CERCLA plaintiffs who cannot bring a CERCLA § 113 claim (having not been the prior subject of a § 106 or § 107 claim), but whose cleanup may not have been 'voluntary' in the strictest sense").

and Defendant Grannis is dismissed.  However, Plaintiffs' CERCLA claim against County

Defendant survives County Defendant's motion to dismiss.

> **D.     Plaintiffs' Civil Rights Claims Under 42 U.S.C. § 1983**
>
> > **1.     Due Process Claims Against Defendants Conlon, Brazell, and Leary and Corporate Defendants**

As described in more detail above in Part I.B. of this Decision and Order, Defendants

Conlon, Brazell, and Leary seek the dismissal of Plaintiffs' due process claims arising from

those three Defendants' (and Corporate Defendants') entrance onto Plaintiffs' properties and

performance of remedial work essentially for the following reasons: (1) Plaintiffs' claims are

barred by the doctrine of collateral estoppel; (2) Defendants Conlon, Brazell, and Leary are

immune from suit under the doctrine of sovereign immunity because the claims asserted against

them are actually claims asserted against them in their official capacity and Plaintiffs have failed

to establish that New York State waived its sovereign immunity; (3) Defendants Conlon, Brazell,

and Leary are entitled to qualified immunity because their actions did not violate any clearly

established rights, and were not objectively unreasonable, in light of the authority granted to

them by an administrative law judge and the New York State courts to conduct investigative and

remedial activities on Plaintiffs' property; (4) Plaintiffs have failed to allege facts plausibly

suggesting that Defendants Conlon, Brazell, and Leary interfered with a constitutionally

cognizable property interest; (5) Plaintiffs have failed to allege facts plausibly suggesting that the

efforts taken by Defendants Conlon, Brazell, and Leary to investigate and remediate Plaintiffs'

environmental violations were "arbitrary," such that Plaintiffs may succeed on their substantive

due process claim; and (6) Plaintiffs have failed to allege facts plausibly suggesting that the

actions of Defendants Conlon, Brazell, and Leary constitute a "taking."

In addition, Corporate Defendants seek the dismissal of these due process claims essentially on two grounds: (1) Corporate Defendants cannot be held liable as "state actors," because they were acting solely at the direction, and under the supervision, of state officials; and (2) it is contrary to "good public policy" to hold a government contractor liable for damages.

Based on even the most liberal construction of Plaintiffs' Amended Complaint, the Court accepts these four Defendants' argument that Plaintiffs have failed to allege facts plausibly suggesting a procedural due process claim based on Defendants Conlon, Brazell, and Leary and Corporate Defendants' entry onto Plaintiffs' properties and performance of remedial work.

"To prevail on the procedural due process claim, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *Tuchman v. Conn.*, 185 F. Supp.2d 169, 173 (D. Conn. 2002) (citing *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 [2d Cir. 1993]). "While the Fourteenth Amendment's procedural requirements protect property, that property can take many forms." *Tuchman*, 185 F. Supp.2d at 173 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 [1972]). The term "'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'" *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (quoting *Roth*, 408 U.S. at 577). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry*, 408 U.S. at 601.

"To have a property interest in a benefit, a person . . . must have more than an abstract need or desire for it." *Tuchman*, 185 F. Supp.2d at 173-74. Rather, that person must "have a legitimate claim of entitlement to it." *Leland v. Moran*, 100 F. Supp.2d 140, 144 (N.D.N.Y. 2000) (Hurd, J.) (citing *Roth*, 408 U.S. at 577). "In almost all cases, the existence of a federally

47

protectable property right is an issue of law for the court." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

The impact of state action on a plaintiff's business provides a possible ground for a procedural due process claim. *See, e.g.*, *Tuchman*, 185 F. Supp.2d at 174. However, "business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense." *Coll. Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). As a result, to the extent Plaintiffs' procedural due process claim is based on the these four Defendants taking actions that effectively "harmed" Plaintiffs' business operations (Dkt. No. 46 at ¶¶ 126, 133, 145), the claim must be dismissed. *See Tuchman*, 185 F. Supp.2d at 174 ("The [notice of violation] does not deprive the plaintiffs of specific business assets; it only affects their ability to conduct business. . . . Accordingly, the impact of the NOV on plaintiffs' business does not implicate a property interest for the procedural due process claim.").[20]

In addition, to the extent Plaintiffs' seek to assert a substantive due process claim based on these four Defendants removing materials from Plaintiffs' properties, that claim is dismissed. This is because, based on the allegation in the Amended Complaint that "[t]he State Court Order authorized NYSDEC and the Commissioner to enter . . . the Murtaugh Property for the purpose of performing investigations and site remediation work required by the [SAO]" (Dkt. No. 46 at ¶ 111), the Amended Complaint cannot support even a plausible inference that the actions by Defendants was "so outrageously arbitrary as to be gross abuse of governmental authority."

---

[20]     The Court notes that it does not interpret Plaintiffs' claims as asserting the existence of a protected liberty interest under the Fourteenth Amendment, given the Amended Complaint's focus on "destruction" and "damage" to Plaintiffs' properties, and the "harm" to Plaintiffs' business. (Dkt. No. 46 at ¶¶ 126, 133, 138, 145.) *See Tuchman*, 185 F. Supp.2d at 174 n.7.

*Natale*, 170 F.3d at 263; *see also Tuchman*, 185 F. Supp.2d at 174.

Finally, to the extent the Amended Complaint asserts a claim for taking of property without just compensation, based on these four Defendants allegedly performing an excavation that lowered the water table and enhanced the flow of leachate discharges from the City Dump, that claim is dismissed on ripeness grounds.  This is because Plaintiffs have failed to allege facts plausibly suggesting that, before commencing this action, they sought just compensation for their "taken" property from New York State.  *See Livant v. Clifton*, 334 F. Supp.2d 321, 326 (E.D.N.Y. 2004) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied. . . .  In New York, there are two such reasonable certain and adequate provisions.  One is to seek compensation through the procedures detailed in the New York State Eminent Domain Procedure Law. . . .  The other is to bring a state law action under Article I, Section 7 of the New York State Constitution.") (internal quotation marks and citations omitted); *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002) (dismissing a takings claim on ripeness grounds due to plaintiff's failure to first seek compensation via an Article 78 proceeding).

The Court would add only that the Takings Clause seeks to prevent "the government from taking private property for public use without just compensation[,]" *Palazzolo v. Rhode Island*, 121 S. Ct. 2448, 2458 (2001), and "[a] diminution in property value . . . does not amount to a Fifth Amendment taking."  *Schwasnick v. Fields*, 08-CV-4759, 2010 WL 2679935, at *7 (E.D.N.Y. June 30, 2010) (citing, *inter alia*, *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 131 [1978], and *Sag Harbor Port Assocs. v. Vill. of Sag Harbor*, 21 F. Supp.2d 179, 186 [E.D.N.Y. 1998] ["A demonstrated decrease in the value of one's property is insufficient to

constitute a taking."]).  Rather, the plaintiff must allege that "the State has deprived it of 'all reasonable uses' of its land."  *Sag Harbor*, 21 F. Supp.2d at 186 (quoting *Dean Tarry Corp. v. Friedlander*, 650 F. Supp. 1544, 1550 [S.D.N.Y. 1987]).  Here, Plaintiffs have not alleged facts plausibly suggesting that the actions by the State and Corporate Defendants deprived them of all reasonable uses of their properties.

For each of these reasons, Plaintiffs' due process claims based on Defendants Conlon, Brazell, and Leary and Corporate Defendants entering their properties and performing excavations are dismissed.[21]  Moreover, even assuming, for the sake of argument, that Plaintiffs had alleged facts plausibly suggesting that the actions by Defendants Conlon, Brazell, and Leary and Corporate Defendants deprived them of a due process right, the Court finds that these four Defendants would alternatively be entitled to qualified immunity.  This is because the Court finds that their actions in entering Plaintiffs' properties and performing an excavation were objectively reasonable in light of the authority granted to them by an administrative law judge and the New York State courts to conduct investigative and remedial activities on Plaintiffs' properties.[22]

_____

[21]     Because Plaintiffs have failed to allege facts plausibly suggesting that the actions taken by Defendants Conlon, Brazell, and Leary or Corporate Defendants in entering Plaintiffs' properties and performing remedial work violated Plaintiffs' due process rights, the Court need not, and does not, consider whether Corporate Defendants were "state actors."

[22]     Ordinarily, it would be inappropriate for the Court to consider record evidence at this stage of the proceedings.  However, where a complaint  "relies heavily upon [the] terms and effect" of a document, rendering the document "integral" to the complaint, the court may consider the document even if is not incorporated by reference in the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 [2d Cir. 1995] [per curiam]).  Here, in their Amended Complaint, Plaintiffs allege that "[t]he State Court Order authorized NYSDEC and the Commissioner to enter . . . the Murtaugh Property for the purpose of performing investigations and site remediation work required by the [SAO]."  (Dkt. No. 46 at ¶ 111.)  Plaintiffs further allege that "Defendants Conlon, Brazell, Leary, Op-Tech and Simpson, acting under the color of state law,

### 2. Unlawful-Search-and-Seizure Claims Against Defendants Conlon, Brazell, and Leary and Corporate Defendants

As described in more detail above in Part I.B. of this Decision and Order, Corporate Defendants seek the dismissal of Plaintiffs' civil rights claims essentially because (1) Corporate Defendants were acting solely at the direction and under the supervision of state officials, and therefore they cannot be held liable as "state actors," and (2) it is contrary to "good public policy" to hold a government contractor liable for damages. In addition, Defendants Conlon, Brazell, and Leary argue that this claim should be dismissed because (1) Plaintiffs' claims are all barred by the doctrine of collateral estoppel, and (2) Defendants Conlon, Brazell, and Leary are entitled to immunity (either sovereign or qualified).[23]

Based on the current record,[24] the Court finds that the actions taken by these four

---

personally agreed and conspired in violation of the Plaintiffs' due process rights . . . to disregard the requirements and limitations of the [SAO]. . . ." (*Id.* at ¶ 113.) In other words, the New York State Court order authorizing the SAO, and the SAO itself, are "integral" to Plaintiffs' due process claims because the claims arise out of certain Defendants' alleged disregard for the limitations set forth in that order. Thus, in considering this claim, the Court may consider the New York State Court order and the SAO. After doing so, the Court finds that the SAO, and subsequent court order enforcing the SAO, authorized the conduct that allegedly violated Plaintiffs' due process rights. (*See* Dkt. No. 56, Attach. 5; Dkt. No. 56, Attach. 12; Dkt. No. 56, Attach. 19 [ordering Plaintiffs to "permit the [NYSDEC], and its employees, agents, contractors, and/or designated representatives, to enter the [Flood Property] and [Murtaugh Property] . . . for the purpose of investigating and remediating known and suspected discharges, spills and releases of hazardous substances and petroleum waste including any measures that may be necessary to characterize and clean up such contamination"]; Dkt. No. 56, Attach. 24.)

[23] State Defendants do not address the merits of this claim in their motion papers. (*See generally* Dkt. No. 66, Attach. 2.)

[24] Again, ordinarily, it would be inappropriate for the Court to consider record evidence at this stage of the proceedings. However, again, Plaintiffs allege in their Amended Complaint that "[t]he State Court Order authorized NYSDEC and the Commissioner to enter . . . the Murtaugh Property for the purpose of performing investigations and site remediation work required by the [SAO]." (Dkt. No. 46 at ¶ 111.) In addition, as they allege with regard to their due process claims, Plaintiffs allege that "Defendants Conlon, Brazell, Leary, Op-Tech and Simpson, acting under the color of state law, personally agreed and conspired in violation of the

Defendants in entering Plaintiffs' properties, excavating (and presumably removing) unidentified materials,[25] and allegedly searching areas of Plaintiffs' properties beyond the areas identified in the SAO, were objectively reasonable.[26]  The Court bases this finding on the following: (1) the language in the SAO, which ordered Plaintiffs to, among other things, "[i]mmediately grant full access to the [Murtaugh Property], at all times, to [NYS DEC] staff, or other designees, agents or contractors, for the purposes of monitoring and ensuring compliance with the terms of th[e SAO]" (Dkt. No. 56, Attach. 5); (2) the New York State Court order enforcing the SAO, which authorized the NYS DEC, and its employees, agents, contractors, and/or designated representatives, to enter the Flood Property and Murtaugh Property "for the purpose of investigating and remediating known and *suspected* discharges, spills and releases of hazardous substances and petroleum waste including *any measures* that may be necessary to characterize and clean up such contamination" (Dkt. No. 56, Attach. 19 [emphasis added]); and (3) the Appellate Division's decision affirming the New York State Court order, which also expressly (a) "informed [Plaintiffs] in advance that the inspections to which he or she is subject do not constitute discretionary acts by a government official but are conducted pursuant to a statute[,]" and (b) concluded that the prior entry onto Plaintiffs' properties without a warrant "d[id] not

Plaintiffs' . . . rights not to be subject to unreasonable search and seizure . . . to disregard the requirements and limitations of the [SAO] . . . ." (*Id.* at ¶ 113.)  As a result, in considering this claim, the Court may consider the New York State Court order and the SAO.  *See*, *supra*, Part II.A. of this Decision and Order (reciting legal standard on a motion to dismiss for failure to state a claim).

[25]     The Court separately addresses Plaintiff Gail Murtaugh's claim regarding the removal of scrap materials below.

[26]     In reaching this conclusion, the Court assumes (for the purpose of this Decision and Order) that Corporate Defendants were state actors.  *See*, *supra*, note 21 of this Decision and Order.  The Court notes also that, in the event Corporate Defendants were not state actors, they could not be liable for violating Plaintiffs' constitutional rights.

violate the proscription against unreasonable searches and seizures contained in the Fourth

Amendment of the United States Constitution . . . ." (Dkt. No. 56, Attach. 24).

For these reasons, Plaintiffs' unlawful-search-and-seizure claims against Corporate

Defendants and Defendants Conlon, Brazell, and Leary are dismissed.

### E.   Plaintiff Gail Murtaugh's Due Process and Unlawful-Search-and-Seizure Claims Against Defendant Leary and Corporate Defendants

Again, Corporate Defendants seek the dismissal of Plaintiffs' civil rights claims because

(1) they cannot be held liable as "state actors," and (2) it is contrary to "good public policy" to

hold a government contractor liable for damages.  In addition, Defendant Leary argues that these

claims should be dismissed because (1) they are barred by the doctrine of collateral estoppel, (2)

Defendant Leary is entitled to immunity (either sovereign or qualified), (3) Plaintiffs have failed

to allege facts plausibly suggesting that Defendant Leary interfered with a constitutionally

cognizable property interest, (5) Plaintiffs have failed to allege facts plausibly suggesting that

Defendant Leary's actions were "arbitrary," such that Plaintiffs may succeed on their substantive

due process claim, and (6) Plaintiffs have failed to allege facts plausibly suggesting that

Defendant Leary's actions constitute a "taking."

Based on the current record, the Court finds that Defendant Leary and Corporate

Defendants are entitled to qualified immunity for Corporate Defendants' entry on, and removal

of, Plaintiff Gail Murtaugh's property.[27]

Plaintiffs allege that, "[u]pon information and belief, Defendant Leary directed

[Corporate Defendants] . . . to remove from the Murtaugh Property and sell valuable scrap

materials belonging to Plaintiffs Gail Murtaugh and Crosby Hill Auto Recycling." (Dkt. No. 46

---

[27]      Again, the Court assumes (for the purpose of this Decision and Order) that
Corporate Defendants were state actors.  *See*, *supra*, note 21 of this Decision and Order.

¶ 150.)  Plaintiffs allege that "[t]he sale of this scrap . . . constitutes a civil conversion under state law."  (*Id*. at ¶ 151.)  Plaintiffs further allege that "[t]he conversion of the scrap deprived Crosby Hill of its property without due process of law in violation of both the New York State and United States Constitutions."  (*Id*. at ¶ 157.)

The SAO was issued on December 15, 2003.  (Dkt. No. 56, Attach. 5.)  On August 28, 2006, the New York State Supreme Court issued a Decision and Order, which, among other things, denied Plaintiffs' request to stay the SAO pending appeal to the Appellate Division. (Dkt. No. 59, Attach. 5, at 123-24.)  On July 18, 2007, the Appellate Division issued a Decision (Dkt. No. 56, Attach. 24), which affirmed the New York State Supreme Court's Decision and Order (Dkt. No. 59, Attach. 5, at 141).

The SAO ordered Murtaugh Plaintiffs to, among other things, "stop all car processing activities at the [Murtaugh Property, and] . . . [w]ithin [seven] days of the issuance of th[e] Order, move all existing vehicles, metals and debris of any kind, to determine if they are further causes of additional releases of contaminants, and to determine if sources of contamination exist beneath them."  (Dkt. No. 56, Attach. 5.)  The SAO stated that the "vehicles and debris may only be stored at the [Murtaugh Property] in a way that does not allow any additional releases of contamination to the environment."  (*Id*.)

Plaintiffs allege that "[p]rior to entering the [Murtaugh Property], Defendants Conlon, Brazell, Leary, Op-Tech and Simpson met in Syracuse, NY on or about September 14, 2007." (Dkt. No. 46 at ¶ 112.)  In other words, based on the allegations in the Amended Complaint, Corporate Defendants did not enter the Murtaugh Property and remove the "valuable scrap materials" until months after the Appellate Division issued its Decision (and more than one year after Judge Karalunas issued her Decision).  Furthermore, it may be reasonably assumed from

the allegations in the Amended Complaint that, at the time that the "valuable scrap material" was removed, Plaintiff Gail Murtaugh was aware of her obligation to remove the material.[28]  For these reasons, Corporate Defendants' actions, which were taken based on Plaintiff Gail Murtaugh's failure to comply with her obligation, were in accordance with the SAO.  As a result, the Court finds that Corporate Defendants' actions were objectively reasonable.[29]

The Court would add only that, to the extent Plaintiff Gail Murtaugh has asserted a takings claim, it is not ripe, because Plaintiffs have failed to allege facts plausibly suggesting that Plaintiff Gail Murtaugh sought just compensation for her taken property from New York State.  *See Livant*, 334 F. Supp.2d at 326; *Vandor, Inc.*, 301 F.3d at 39.

### F.    Plaintiffs' State Law Claims

#### 1.    Claim for Nuisance Against Defendant New York State, Defendant Grannis, and County Defendant

As described in more detail above in Part I.B. of this Decision and Order, Defendant New York State and Defendant Grannis seek the dismissal of Plaintiffs' nuisance claim essentially because, among other things, Plaintiffs "already litigated and lost their pendant issues/claims in State court."  In addition, County Defendant seeks the dismissal of Plaintiffs' nuisance claim

---

[28]    Plaintiffs have not alleged facts plausibly suggesting that (1) the vehicles and debris were removed from the Murtaugh Property, and (2) placed back on the property only after it was determined that (a) the vehicles and debris are not further causes of additional releases of contaminants, (b) sources of contamination do not exist beneath the vehicles and debris, and (c) storage on the property would not allow any additional releases of contamination to the environment.

[29]    *See Livant*, 334 F. Supp.2d at 323-26 (dismissing, on grounds of qualified immunity, plaintiff's unlawful search and seizure, due process, conversion, trespass, and negligence claims based on certain town officials entering plaintiff's property and removing "debris," which consisted of "ten Bogward Isabella classic cars" and a trailer "full of antique furniture," because town "had passed a resolution requiring plaintiff to clean up his lawn and remove the debris in question," and officials were "acting pursuant to the resolution").

essentially because, among other things, (1) it is barred by the statute of limitations, and (2) Plaintiffs failed to timely serve a notice of this claim.[30]

As an initial matter, the Court agrees with Defendant New York State and Defendant Grannis that this claim against them is barred by the rule of *res judicata*.[31]  Under the rule of *res judicata*, "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties . . . upon the same claim [.]" *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001).  Therefore in order "[t]o demonstrate that a claim is precluded based upon res judicata, the moving party must show [the following]: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Witchard v. Montefiore Med. Ctr.*, 05-CV-5957, 2006 WL 2773870, at *6 (S.D.N.Y. Sept. 26, 2006) (citing, *inter alia*, *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 [2d Cir. 2000]).

With regard to the first element, "a dismissal for failure to exhaust administrative remedies is not necessarily an adjudication on the merits." *Witchard*, 2006 WL 2773870, at *7. Rather, "[s]uch dismissals are normally without prejudice, and do not bar instituting another suit after administrative remedies are properly exhausted." *Id.* (citing, *inter alia*, *Criales v. Am. Airlines, Inc.*, 105 F.3d 93, 95-97 [2d Cir. 1997]).  However, "a dismissal is considered to be on

---

[30]      Because federal claims survive Defendants' motions to dismiss, the Court need not consider the argument asserted by State and County Defendants that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims given the dismissal of all federal claims.

[31]      "Though res judicata is usually plead in an answer, a Rule 12(b)(6) dismissal on the basis of the doctrine is appropriate when it is clear . . . that plaintiff's claims are barred as a matter of law." *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp.2d 208, 220 (S.D.N.Y. 2002).

the merits where it is no longer possible to properly exhaust administrative remedies." *Id*.

Here, Plaintiffs conceded in the New York State Court action that, with regard to their claim that the NYS DEC and New York State officials should be enjoined from using the racetrack and training facility located on the City Dump, they did not exhaust their administrative remedies by seeking administrative review of the NYS DEC's "alleged regulatory violations," pursuant to N.Y. Comp. Codes R. & Regs. tit. 6, § 619.1. (Dkt. No. 59, Attach. 5, at 135.) The dismissal in New York State Supreme Court based on Plaintiffs' non-exhaustion appears to have been with prejudice, as indicated by that court not permitting Plaintiffs an opportunity to exhaust, and the Appellate Division's affirmance of the decision and dismissal of Plaintiffs' petition "in its entirety" (without use of the words "without prejudice"). (Dkt. No. 56, Attach. 24, at 4.) As a result, the Court deems the dismissal of Plaintiffs' claim that the NYS DEC and New York State officials should be enjoined from using the racetrack and training facility located on the City Dump to be on the merits.

Turning to the second element of *Monahan*, it cannot be disputed that Murtaugh Plaintiffs, New York State, the NYS DEC, and then-Commissioner Sheehan were parties to the New York State Court action. (Dkt. No. 59, Attach. 5, at 122.) Moreover, in filing their Answer to the petition filed by the Murtaugh Plaintiffs in New York State Court, New York State and the NYS DEC "asserted various counterclaims based on allegations that [Murtaugh Plaintiffs] were continuing to contaminate the Crosby Hill site and an adjacent property, known as the Flood Drive site, in violation of the SAO and various provisions of the Environmental Conservation Law and Navigation Law." (Dkt. No. 56, Attach. 24, at 3.) Thus, it appears that Flood Plaintiffs were also a party to the New York State Court action. However, even assuming that they were not, the Court finds that Flood Plaintiffs' interests were sufficiently represented in the New York Sate Court action, because (1) the City Dump's alleged contamination impacted the Flood

Property (as well as the Murtaugh Property) at the time of the New York State Court action, and (2) the request by Murtaugh Plaintiffs' in the New York State Court action to enjoin New York State, Commissioner Grannis, and County Defendant from operating the City Dump is the same as the request by all Plaintiffs in this action–i.e., Flood Plaintiffs had an interest then in the injunctive relief they seek now.[32]  As a result, the Court finds that Plaintiffs, New York State, and Defendant Grannis (by way of title only) were parties to the New York State Court action.

Finally, turning to the remaining prong of *Monahan*, Defendant must show that Plaintiffs' "current claims were raised, or at least could have been raised, in [their] first action." *Witchard*, 2006 WL 2773870, at *8.  For purposes of *res judicata*, the Second Circuit has explained that,

"[w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Tech. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).

"It is therefore necessary to determine whether the instant action arises from the same transaction-or 'nucleus of operative fact' as the [state court] Action." *Witchard*, 2006 WL 2773870, at *8.  "To ascertain whether two actions spring from the same transaction or claim, [the court must] look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Interoceanica Corp.*

---

[32]        In *Watts v. Swiss Bank Corp.*, 317 N.Y.S.2d 315 (N.Y. 1970), the New York Court of Appeals stated that although privity did not possess a "technical and well-defined meaning," it described a rule by which "a person may be bound by a prior judgment to which he was not a party of record."  317 N.Y.S.2d at 320.  The Court of Appeals went on to enumerate certain parties encompassed by the term privity, including "those whose interests are represented by a party to the action . . . ."  *Id.*

*v. Sound Pilots, Inc*., 107 F.3d 86, 90-91 (2d Cir. 1997).

Here, Plaintiffs' nuisance claim arises from the exact same nucleus of operative facts as those giving rise to the New York State Court action.  More specifically, Plaintiffs' claim in the state action sought to enjoin New York State, the NYS DEC, and the Commissioner of the NYS DEC from operating the training facility and racetrack on the City Dump until the City Dump "has been properly closed" in compliance with "either 6 NYCRR Part 360 or 6 NYCRR Part 375."  (Dkt. No. 61 at 256-57.)  Plaintiffs' request for injunctive relief was based on their allegation that (1) the City Dump "on which DEC operates its training facility and racetrack" continuously discharges leachate, and (2) "DEC's excavation into what purports to be the cap of the inactive waste site . . . increases the likelihood that precipitation and runoff will increase the generation of leachate from the [City Dump] . . . onto [Murtaugh Plaintiffs'] property."  (*Id*.)  In this action, Plaintiffs' also request that the Court enjoin State Defendants from operating the training facility and racetrack until a "proper closure" occurs, "as required by RCRA and 6 NYCRR Part 360 and 6 NYCRR Part 375[.]"  (Dkt. No. 46 at ¶¶ 183-84.)  Moreover, Plaintiffs' request is based on their allegations that (1) "the City Dump has and continues to discharge leachate containing pollutants, hazardous substances and hazardous wastes onto the Murtaugh Property," and (2) "[l]eachate discharged from the City Dump flows downstream and . . . impacts a portion of the Flood . . . Property."  (*Id*. at ¶¶ 176-77.)

Simply put, aside from Plaintiffs' additional allegation in this action that leachate discharged from the City Dump also impacts the Flood Property, the facts that give rise to the nuisance claim in this action are identical to the facts that gave rise to Plaintiffs' nuisance claim in New York State Court.  Moreover, the Court has already found that Flood Plaintiffs' interests were adequately represented in the New York State Court action by Murtaugh Plaintiffs' claim that leachate discharged from the City Dump negatively impacts their property.

For these reasons, the Court concludes that Plaintiffs' nuisance claim in this action against Defendant New York State and Defendant Grannis is barred by the rule of *res judicata*.[33]

Turning to Plaintiffs' nuisance claim against County Defendant, the Court rejects County Defendant's argument that this claim should be dismissed because Plaintiffs did not provide adequate notice under Gen Mun. Law § 52(1).  As County Defendant concedes in its motion papers, notice need not be provided "when the parties primarily seek equitable relief."  (Dkt. No. 56, Attach. 30 at 27.)  Here, Plaintiffs request only equitable relief with regard to their nuisance claim.  (Dkt. No. 46 at ¶¶ 183-84.)

Furthermore, the Court rejects County Defendant's argument that Plaintiffs' nuisance claim is barred by the three-year statute of limitations running from the earlier of the date of discovery and the date when, through the exercise of reasonable diligence, such injury should have been discovered.  It is true that "a damages claim for latent injury to property resulting from the seepage or infiltration of a toxic foreign substance over time is governed by the § 214-c limitations period[,]" which is three years from "when the plaintiff first discovers the property damage; the fact that the defendant's conduct may be characterized as a continuing trespass or nuisance does not delay the commencement of the limitations period."  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 709 (2d Cir. 2004).  However, "[s]ection 214-c(2) . . . applies only to a claim for 'damages.'"  *Bano*, 361 F.3d at 710.  "Thus, the timeliness of a claim for injunctive relief is not governed by that section . . . and an injunctive remedy may be available to halt a continuing nuisance or trespass even when the recovery of money damages is barred by the

---

[33]     The Court notes that, although this claim may be precluded because it may be deemed to have been adjudicated on the merits, the claim may not be precluded based on the issue of the County's contribution, or lack thereof, to the contamination on Plaintiffs' properties because that issue was never "actually litigated and necessarily decided" in Plaintiffs' state action.

statute of limitations[.]"  *Id*.  In other words, "to the extent that the relief requested . . . on [a] property damage claim[] include[s] injunctive relief in the form of remediation of . . . property or remediation of . . . [a] plant site, those claims are not barred by § 214-c[.]"  *Id.* at 713.

Finally, the Court rejects County Defendant's argument that this claim should be dismissed based on Plaintiffs' failure to join an indispensable party, because "nuisance liability is joint and several."  *New York v. Schenectady Chem., Inc*., 103 A.D.2d 33, 38 (N.Y. App. Div. 3 Dept. 1984).

As a result, Plaintiffs' nuisance claim against Defendant New York State and Defendant Grannis is dismissed.  Moreover, to the extent Plaintiffs' nuisance claim against County Defendant seeks monetary relief, that claim is dismissed.  However, to the extent Plaintiffs' nuisance claim against County Defendant seeks equitable relief, it survives County Defendant's motion to dismiss.

### 2.    Claim for Declaratory Relief Against Defendant New York State and Defendants Miller, Brazell, Conlon, and Leary

Plaintiffs' claim for declaratory relief is based on the same conduct that gave rise to Plaintiffs' due process and unlawful search and seizure claims (Dkt. No. 46 at ¶¶ 188-91), which the Court dismissed on grounds of qualified immunity.  "The doctrine of qualified immunity is generally understood to only protect government officials from federal, not state, causes of action."  *Bermudez v. City of N.Y.*, 10-CV-1162, 2011 WL 1218406, at *13 (S.D.N.Y. Mar. 25, 2011) (citing *Jenkins v. City of N.Y.*, 478 F.3d 76, 86 [2d Cir. 2007]).  "New York common law, however, fills this gap by providing government officials with a similar form of protection against state law claims."  *Bermudez*, 2011 WL 1218406, at *13.  "New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis."  *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (agreeing with Plaintiffs that "defendants' defense . . . necessarily depend[s] on

the same 'reasonableness' at issue with respect to Plaintiffs' federal claims").

For the reasons stated in Parts III.D.1, III.D.2, and III.E. of this Decision and Order, the Court finds that the actions taken by Defendants Miller, Brazell, Conlon, and Leary were reasonable.  As a result, Plaintiffs' state law claim for declaratory relief (asserted against Defendant New York State, and Defendants Miller, Brazell, Conlon, and Leary) is dismissed on the ground of qualified immunity.

### 3.      Claim for Negligence Against Corporate Defendants

Plaintiffs' claim for negligence is also based on the same conduct that gave rise to Plaintiffs' due process and unlawful search and seizure claims (Dkt. No. 46 at ¶¶ 192-94), which the Court dismissed on the ground of qualified immunity.  For the reasons stated above in Parts III.D.1, III.D.2, and III.E. of this Decision and Order, the Court finds that Corporate Defendants' actions were reasonable.  As a result, Plaintiffs' state law claim for negligence (asserted against Corporate Defendants) is dismissed on the ground of qualified immunity.

### G.     State Defendants' and Corporate Defendants' Abstention Arguments

Because adequate grounds exist on which to grant the motions to dismiss filed by the State Defendants and Corporate Defendants, the Court need not, and does not, address those Defendants' abstention arguments.

**ACCORDINGLY,** it is

**ORDERED** that County Defendant's motion to dismiss (Dkt. No. 56) is **GRANTED** **in part** and **DENIED in part** in the following respects:

(1) County Defendant's motion is **GRANTED** with regard to Murtaugh

Plaintiffs' RCRA claim under 42 U.S.C. § 6972(a)(1)(B); and

(2) County Defendant's motion is **DENIED** in all other respects; and it is further

**ORDERED** that State Defendants' motion to dismiss (Dkt. No. 59) is **<u>GRANTED</u>**.  The Clerk of the Court is directed to terminate this case as to New York State, New York State Department of Environmental Conservation Commissioner Pete Grannis, Benjamin Conlon, Richard Brazell, Maureen Leary, and Andrea Rhonda Miller; and it is further

**ORDERED** that Corporate Defendants' motion to dismiss (Dkt. No. 60) is **<u>GRANTED</u>**. The Clerk of the Court is directed to terminate this case as to Op-Tech Environmental Services and William Simpson; and it is further

**ORDERED** that this case is referred to Magistrate Judge Lowe for a Rule 16 conference at his earliest convenience to set pretrial scheduling deadlines; and it is further

**ORDERED** that counsel are directed to appear on **OCTOBER 3, 2011 at 2:00 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority.  Plaintiffs are further directed to forward a written settlement demand to defendants no later than **September 12, 2011**, and the parties are directed to engage in meaningful settlement negotiations **prior to the 10/3/11** conference.

Dated: August 16, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge